**UNITED STATES of America**

v.

**Murray KRAM.**

**Cr. No. 14777.**

United States District Court
W. D. Pennsylvania.

Nov. 1, 1956.

D. Malcolm Anderson, Jr., U. S. Atty., Hubert I. Teitelbaum, First Asst. U. S. Atty., Pittsburgh, Pa., for plaintiff.

Marjorie Matson, Pittsburgh, Pa., for defendant.

MARSH, District Judge.

The defendant, Murray Kram, was found guilty on ten counts of mail fraud [1] and moved for judgment of acquittal and in the alternative for a new trial. We are of the opinion that the verdict should stand.

The indictment charged that at certain times the defendant, with fraudulent intent, did devise a scheme to defraud divers persons. The substance of the scheme as set forth was that he organized and operated a business enterprise known as "Religious Distributing Co.", which company was solely owned by him and operated exclusively for his personal gain; that he obtained names from telephone directories and mailed at a post office box in Pittsburgh inexpensive religious articles, a printed solicitation for a dollar, and a return envelope addressed to Religious Distributing Co.; that the solicitation contained a prayer, "and was

1. § 1341, 18 U.S.C.A.

drawn in such a manner as to mislead the victims into thinking that it was a solicitation from a religious organization and, in so believing, to cause the said victims to return to the defendant the sum of $1.00 by mailing same to the Religious Distributing Co." It further charged that the defendant caused the foregoing to be mailed knowingly and unlawfully, and with fraudulent intent and for the purpose of executing said scheme to defraud.

A motion to quash this indictment was overruled in a scholarly opinion written by our associate, the Honorable John L. Miller. Defendant moved to arrest judgment, but the additional attack he now makes on the indictment is not convincing and that motion will be denied.

■ In passing on the defendant's reasons for judgment of acquittal, we take that view of the evidence, with inferences reasonably and justifiably to be drawn therefrom, most favorable to the prosecution. Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680; Henderson v. United States, 6 Cir., 1953, 202 F.2d 400.

In 1950 defendant started a mail-order business in Pittsburgh under the name "Religious Culture Society". From an extensive collection of telephone directories, he compiled mailing lists principally of Italian and Slavish names. To these people he mailed a card bearing the trade name at the top, a prayer on the left side, and attached to the card was a small religious statuette. The card stated that it was being sent to the addressee in the hope that it would please; if it did, 25 cents (50 cents in a later card) was to be remitted; if not, there was no obligation. An enclosed leaflet requested recipient to forward the names of good Catholics.

Defendant thought the names he selected from the telephone directories would likely include persons who were of the Catholic faith. It seems that he did

not consider Irish Catholics potential remitters.

After several months, this mailing matter was disapproved by the Fraud Division of the United States Post Office because it was thought that the matter tended to deceive the recipients into believing that they were being solicited by a religious organization. In May, 1951, the defendant voluntarily signed an affidavit of discontinuance[2] and agreed, inter alia, that future mailed cards would clearly show that this enterprise was not conducted by a religious organization, but that "it is the sole effort of and for the sole benefit of an individual" and "that affiant will also cause his name to appear on this card as sole owner".

Thereafter, defendant continued to operate, making certain changes from time to time in the details of the mailing matter in order to conciliate the postal authorities. In this he did not succeed for he was advised on two occasions that he was not complying with the spirit of his affidavit of discontinuance and was threatened with formal action on continued non-compliance.

Finally, on February 15, 1952, defendant signed a second affidavit of discontinuance, which stated, inter alia, "[t]hat the enterprise described in the complaint has been discontinued and abandoned and will not be resumed by the undersigned under the above name [Religious Culture Co.] or any other name".[3]

Notwithstanding, the defendant continued to operate substantially the same enterprise under a new name, Religious Distributing Co., until indicted in December, 1955. During this period, the material mailed differed in some particulars, but the prosecution rests its case on packets mailed by defendant during the period from July, 1954 through August, 1955.

On the face of the packet appeared "Religious Distributing Co., Post Office

---

2. Plaintiff's Ex. U.

3. Plaintiff's Ex. V.

Box 8770, Pittsburgh 21, Pa.—Merchandise of Value—Return Postage Guaranteed", the postage paid permit number, and through the envelope window the address of the recipient. The packet contained a return envelope addressed to "RELIGIOUS DISTRIBUTING CO., Post Office Box 8770, Pittsburgh 21, Pa.", a leaflet and a religious trinket, either a metal crucifix and chain or a rosary bracelet, both made in Italy.

The design and contents of the leaflet, accompanying the crucifix and chain, is as follows:[4]

"THIS CRUCIFIX AND CHAIN which is made in Italy is being sent to you in hope you find it worth keeping. If so, please insert $1.00 and mail in the enclosed envelope. If you do not wish to keep your crucifix and chain you are under no obligation.

[Herein appeared a prayer]

"(CUT OUT)"

"It is being sent to you by an enterprise that is owned and operated for the benefit of Murray Kram.

"Additional crucifixes and chains may be ordered."

"POST OFFICE BOX 8770, Pittsburgh 21, Pa."

Over 1,300,000 packets were mailed from July 1, 1954 to June 30, 1955.

Sufficient numbers of the addressees returned a dollar to enable defendant to make a profit on these religious trinkets.[5]

■■ Defendant caused a packet to be mailed to each of the ten persons named in the indictment. These packets were intercepted by a postal inspector and are in evidence. It was not necessary to prove that the packets were received by the addressees, Kreuter v. United States, 5 Cir., 1955, 218 F.2d 532, 535; United States v. Sylvanus, 7 Cir., 1951, 192 F.2d 96, 106; nor was it necessary to show that they were defrauded, Durland v. United States, 161 U.S. 306, 315, 16 S.Ct. 508, 40 L.Ed. 709; or deceived, Henderson v. United States, supra, 202 F.2d at page 405. As there stated "The offense is committed when the scheme has been devised, and in pursuance of it the mail has been used."

■ There was proof, however, that some persons had been defrauded by the

scheme, and the jury could have found from the background evidence and the total picture presented that the packet from the Religious Distributing Company, with the enclosed leaflet and Italian trinket, was so contrived as to create a fraudulent impression, especially among Catholics, and which actually did induce some of the selected addressees to believe they were in receipt of a solicitation from a religious or charitable organization or that such an organization was making a solicitation on behalf of Murray Kram.

A number of witnesses summoned from various sections of the country testified that upon receipt of a packet through the mail, they sent a dollar in the enclosed envelope addressed to the Religious Distributing Co., believing that they were making a religious or charitable contribution. Some of these witnesses testified that they read the leaflet; some said that they partially read it; some said that they merely glanced at the packet and its contents.

4. The design and contents of the leaflet accompanying the rosary bracelet is identical except that the words Rosary Bracelet are substituted for Crucifix and Chain.

5. Defendant testified that he averaged a net profit over a six-year period, including 1954 and 1955, of $7,300 per annum.

Defendant contends that it was prejudicial error to admit this testimony over his objection, for the reason that such was opinion evidence. The evidence was offered, however, to show the effect that the packet and its contents had on the minds of some of the recipients at the time they received it, viz.: that they believed the mailed matter was a religious or charitable solicitation.

We think the testimony was admissible. The state of mind of these witnesses and their act in responding to the solicitation were facts and not opinions.[6] The relevant purpose of the testimony was to prove the very heart of the government's case as alleged in the indictment, viz.: that the solicitation was not only intentionally "drawn in such a manner as to mislead the victims into thinking that it was a solicitation from a religious organization" but that it did cause some of them to so believe and "return to the defendant the sum of $1.00 by mailing same to the Religious Distributing Co." Similar testimony was admitted in Silverman v. United States, 5 Cir., 1954, 213 F.2d 405.

Defendant further contends that the mailed matter did not contain any misrepresentations; that there was no fraud *aliunde* the mailed matter; that there was no showing that the scheme was sufficient to deceive persons of ordinary prudence and comprehension; and hence judgment of acquittal should be entered.

The court does not agree. It has been held that proof of misrepresentations is unnecessary. As stated in Kaufmann v. United States, 3 Cir., 1922, 282 F. 776, 779:

"However impractical and visionary a scheme may be, the use of the mails to execute it does not consti-

tute a crime, if it was devised in good faith. On the other hand, if a scheme is devised with the intention of defrauding, and the mails are used in executing it, *it makes no difference that there is not a misrepresentation of a single existing fact.*" (Emphasis supplied.)

No case has been cited for the principle that in the absence of misrepresentations it is necessary to prove fraud *aliunde* the mailed matter. On the contrary it would seem that such proof is not required. Cf. Silverman v. United States, supra; Hughes v. United States, 5 Cir., 1916, 231 F. 50. It is necessary, however, to show, first, that defendant intentionally devised a scheme to defraud, and, second, that he used the mails as an essential part of that scheme, otherwise the prosecution does not make out a case. Kann v. United States, 1944, 323 U.S. 88, 65 S.Ct. 148, 89 L.Ed. 88. The jury had sufficient evidence before it to find affirmatively in both these respects. The scheme itself need not be effective to defraud any one. Durland v. United States, supra; Henderson v. United States, supra. Of course, the scheme proved in this case was effective as shown by the testimony of the witnesses previously mentioned.

Defendant argued that in the absence of misrepresentations in the mailed matter, the test of defendant's guilty intent is whether the scheme was sufficient to deceive persons of ordinary comprehension and prudence, and that before defendant could be found guilty, the court preliminarily, and ultimately the jury, should have so found. He submitted a point for charge to this effect which was refused.[7]

6. "The state of a man's mind at a given time is as much a fact as is the state of his digestion." Swift v. Rounds, 1896, 19 R.I. 527, 531, 35 A. 45, 46, 33 L.R.A. 561.

7. The point stated: "In order to make out the offense of mail fraud, the Government must prove that the Defendant had a specific intent to defraud. Unless you find that Murray Kram had such intent, you must find him not guilty. I charge you that in determining this question, you must consider whether his plan of operation was such as to deceive persons of ordinary prudence and comprehension and if you find that such persons would not have been deceived by his plan of operation, then you must find him not guilty."

As heretofore stated, the fraudulent scheme need not be effective to defraud any one, and the mailed matter may be "absolutely ineffective" for carrying it out. Durland v. United States, supra. Hence, if no one need be defrauded, whether the recipient is gullible, ignorant or overcredulous,[8] or whether he is skeptical, intelligent or of ordinary prudence and comprehension, we think, is immaterial.

In the Durland case, it was said, 161 U.S. at page 314, 16 S.Ct. at page 511:

"It was with the purpose of protecting the public against all such intentional efforts to despoil, and to prevent the post office from being used to carry them into effect, that this statute was passed".

Thus it seems to the court that, despite an apparently contrary view expressed in the Silverman case and the ingenious argument and skillful analysis of the cases in defendant's brief, that portion of the public who are particularly susceptible to fraudulent schemes because imbued with religious, sympathetic or generous impulses which to some extent cloud their discernment are within the protection of the statute. For to hold that Congress intended to protect only the person of ordinary prudence and comprehension from schemes or artifices to defraud would tend to reward subtle and ingenious artifices, perhaps truthful in fact, but deliberately and intentionally designed to mislead and deceive in order to prey upon the devout, sympathetic and generous.

The defendant also complains that the court refused to affirm his second point. This point was refused because the substance thereof was fully covered in different language in the charge. See United States v. Smith, 3 Cir., 1953, 206 F.2d 905, 911.

An order will be entered refusing arrest of judgment, judgment of acquittal and a new trial.

8. Cf. United States v. Sylvanus, 7 Cir., 1951, 192 F.2d 96, 105; O'Hara v. United States, 6 Cir., 1904, 129 F. 551, 555; Deaver v. United States, 1946, 81 U.S. App.D.C. 148, 155 F.2d 740, 744-745.