**UNITED STATES of America**

v.

**Murray KRAM.**

**No. 12162.**

United States Court of Appeals
Third Circuit.

Argued April 18, 1957.

Decided Sept. 6, 1957.

Marjorie Hanson Matson, Pittsburgh, Pa., for appellant.

Hubert I. Teitelbaum, Asst. U. S. Atty.,Pittsburgh, Pa. (D. Malcolm Anderson, U. S. Atty., Pittsburgh, Pa., on the brief), for appellee.

Before BIGGS, Chief Judge, and GOODRICH and HASTIE, Circuit Judges.

BIGGS, Chief Judge.

The defendant Murray Kram was indicted for violations of the Mail Fraud Act. 18 U.S.C. Section 1341. Prior to Kram's indictment a series of commu-

nications and conferences had ensued between him and the Post Office Department. It appears that commencing in about 1951 Kram had mailed to individuals, chiefly to persons possessing Italian or Eastern European surnames or Christian names corresponding to those of Saints of the Catholic Church and culled from telephone directories, a card or small slip of paper bearing the name "Religious Culture Society" at its top, and a prayer on its left side, accompanied by a small statuette of some holy figure. The card or paper stated that the religious article was made in Italy and that the material was being sent to the addressee in the hope that it would please; and, if it did, the addressee should return 25¢ or 50¢ to Religious Culture Society at a post office box in Pittsburgh, Pennsylvania. A leaflet or paper was enclosed which requested the addressee to forward to the addressor the names of good Catholics. This enterprise was operated by Kram solely for his own benefit and had no connection with any religious organization.

After Kram had pursued this course of business for some months the Fraud Division of the United States Post Office Department disapproved the mailed matter because the Division was of the view that it tended to deceive the recipients, causing them to believe that they were being solicited by a religious organization. Kram voluntarily signed an affidavit of discontinuance. He agreed that material mailed in the future should show clearly that the material was not dispatched by a religious organization but that "it * * * [was] the sole effort and for the sole benefit of an individual" and that he " * * * [would] also cause his name to appear on this card as sole owner." Thereafter Kram had printed on the slip of paper or card accompanying the solicitation the statement that the material "is being sent you by an enterprise that is owned and operated for the benefit of Murray Kram."

There was no explanatory statement as to who was Murray Kram. The suggestion to forward to the addressor the names of good Catholics was omitted.

These changes did not meet with the approval of the Post Office Department and Kram executed a second affidavit of discontinuance. This was on the printed form "(Sol-54a)" and by its terms Kram agreed that the enterprise "described in the [Post Office Inspector's complaint had] * * * been discontinued and abandoned and * * * [would] not be resumed" by him. But Kram actually continued the solicitations generally in the form which he had used following the execution of the first affidavit of discontinuance though he changed the style of his business from "Religious Culture Society" to "Religious Distributing Co." Note that Kram in the continuance of the enterprise still made use of the term "Religious." He sent crucifixes with chains, among other religious objects, described below, through the mails and requested the recipients to pay a dollar for them. Kram was then indicted, tried and convicted of using the mails to defraud. He moved for a judgment of acquittal or, in the alternative for a new trial. The motions were denied [1] and the appeal followed.

■ The ten counts of the indictment, differing only as to names and dates, charged that Kram "devised a scheme to defraud divers persons" by use of a solicitation; that the solicitation "was drawn in such a manner as to mislead the victims into thinking that it was a solicitation from a religious organization and, in so believing, to return to the defendant the sum of $1.00 by mailing * * * [it] to the Religious Distributing Co." and that the mails were employed in furtherance of the scheme.[2] Kram asserts that the indictment did not state a crime cognizable under 18 U.S.C. Section 1341. We cannot agree. The allegations are sufficient to describe a scheme employing a solicitation devised with an intent to

1. See D.C.1956, 145 F.Supp. 662, 665.

2. A motion to dismiss the indictment as not stating a crime was denied. The opinion of the court in respect to this motion was not reported for publication.

defraud within the purview of the statute. We hold that the indictment was valid.

At the trial the United States introduced in evidence packets mailed by Kram after the execution of the second affidavit of discontinuance. The contents of these packets included: a return envelope addressed to "Religious Distributing Co."; a religious article, either a crucifix and chain or a rosary bracelet; and a leaflet on which was printed a prayer, a request for one dollar, and, in accordance with the first affidavit of discontinuance, a statement that the article was sent by "an enterprise that is owned and operated for the benefit of Murray Kram." [3] The United States also introduced evidence of the method by which names and addresses were obtained by Kram, and a brief history of Kram's activities from the time the Fraud Division had first intervened, and of his difficulties with the Post Office Department. Finally, witnesses for the United States who had received Kram's mailing packet testified that they had sent Kram money believing their payments were contributions for a religious or charitable organization. Witnesses for Kram testified that they had thought they were buying religious articles from a business house. It is not necessary for us to pass upon the relevancy and materiality of the evidence which we have outlined above. Most of it was admitted without objection. We detail it here primarily to the end that the background of the case may become apparent.

Kram contends that his operations did not constitute a fraudulent scheme because there was no false representation in the mailed matter itself and the United States failed to prove fraud [sic] "aliunde the communication"; and that it was error to admit the testimony of the witnesses who testified that they had believed their remittances were for the benefit of a religious or charitable organization.

We put to one side Kram's assertion that it was error to admit the evidence of individuals who had purchased religious articles from Kram because they thought that they were making contributions to a religious organization. We do not reach this issue. The United States contends and indeed it is well established that ordinarily the two elements required to constitute a violation of the Mail Fraud Act are the intentional devising of a scheme to defraud and the use of the mails in carrying out that scheme. Pereira v. United States, 1953, 347 U.S. 1, 8, 74 S.Ct. 358, 98 L.Ed. 435; United States v. Young, 1914, 232 U.S. 155, 161, 34 S.Ct. 303, 58 L.Ed. 548; Henderson v. United States, 6 Cir., 1953, 202 F.2d 400, 405. See also Kaufmann v. United States, 3 Cir., 1922, 282 F. 776, 779. That Kram employed the mails in the furtherance of his enterprise is undisputed. A mail fraud indictment may or may *not* allege that the solicitation was so drawn as to be intentionally misleading. If the latter, it is sufficient if an intent to defraud is found by the jury to exist on the part of the person dispatching the material mailed even though the material itself in the opinion of the jury is completely ineffective to deceive anyone. See Durland v. United States, 1896, 161 U.S. 306, 314, 16 S.Ct. 508, 40 L.Ed. 709, and United States v. Sylvanus, 7 Cir., 1951, 192 F.2d 96.

But in this case the United States has elected to set up in the indictment as the substance of the offense that the printed material, with which the religious object was enclosed, was drawn up in such a manner as to mislead the persons who received it from Kram into thinking it was a solicitation from a religious organization. If the United States has failed to prove this allegation it has failed to prove, in the words of the indictment, "the substance of * * * [the] scheme", and, hence to prove Kram guilty as charged in the indictment. This is true whether or not Kram in fact devised and executed a fraudulent scheme to

---

3. For the precise form of the leaflet see the opinion of the court below at 145 F.Supp. at page 665.

mulct the public by the use of the mails. In other words the United States has cast its whole case on the proof of an intentionally misleading solicitation. It need not have done so but it so chose and must stand or fall on its choice. To try Kram upon some other theory of guilt in view of the charge of the indictment would be to deny him due process of law.

 There is very little evidence, indeed hardly a scintilla, to support the charge of the indictment that the material mailed by Kram after the execution of the second affidavit of discontinuance, and on which the indictment was based, was misleading. That evidence follows: Kram called his enterprise "Religious Distributing Co." It was an "enterprise" but it was one that distributed religious objects and was not, strictly speaking, a "religious" enterprise and it was not conducted by a "religious" organization. But many legitimate business firms which sell religious objects make use of the descriptive words "Religious" or "Religion" in their business styles or titles. We cannot concur in the contention of the prosecution that the use of the style "Religious Distributing Company" was really misleading. The trial judge repeatedly stated that he could perceive no fraud in the solicitation itself and in this we agree with him. We will assume that the articles which Kram sold were overpriced, though a comparatively small percentage of them were paid for or returned, but he is not charged with fraud for selling articles at an exorbitant price. Indeed, it would be difficult to sustain such a charge, were it made, in view of the ancient maxim, *caveat emptor*. The articles were also represented as being made in Italy. This representation was not disproved and we are not prepared to say that because a religious article is represented as being made in Italy that a solicitation to buy it constitutes a religious fraud. A prayer accompanied each article but religious articles are frequently sold with printed prayers attached to them and sometimes even with prayers painted or emblazoned on them. Prayers accompanying religious articles do not prove that the vendor of the articles is perpetrating a religious fraud. Viewing all the evidence which the United States offered it seems to us to fall far short of sustaining the burden of proof necessary to prove that, in the words of the indictment, Kram's solicitation "was drawn in such a manner as to mislead the victims into thinking that it was a solicitation from a religious organization * * *." This is so even if we resolve every inference to be drawn from the evidence, as we must, against Kram. Glasser v. United States, 1942, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680. How far short the proof falls becomes apparent if one tests by analogy the circumstances of this case by the standards which would have to be employed to sustain a charge of fraud in a civil suit. It is clear that the evidence here would not prove fraud by a preponderance of the evidence: certainly it does not prove a fraudulent solicitation beyond a reasonable doubt.

Neither the prosecution nor the defense seem to have given heed to the terms of the indictment which, as we have said, alleged as the substance of the offense fraudulent solicitation by Kram. The trial court in effect charged the jury that proof of a general fraudulent intent on Kram's part plus proof of the use of the mails were sufficient to sustain the charge of the indictment. This was erroneous in view of the substance of the offense as charged in the indictment. But no exception was taken by Kram to the charge in any respect material here. Nor were any requests to charge made by Kram material to the issue of the failure of the proof to sustain the allegations of the indictment.

 Kram did move for a judgment of acquittal on the ground that the verdict was against the weight of the evidence. The verdict was against the weight of the evidence insofar as proof of fraudulent solicitation was concerned as we have demonstrated. But the real vice in the verdict was that the proof did not sustain the charge of fraudulent solicitation although the United States

**834**

insisted to the contrary. We think that the motion for judgment of acquittal should have been granted on the ground indicated. But even if this were not so and the basis of the motion be deemed to be not germane to the issue of the failure of the proof to meet the allegations of the indictment we are nonetheless of the opinion that the court below in sustaining the jury's verdict under the circumstances committed error so fundamental as to require us to direct the entry of a judgment of acquittal. Gregg v. United States, 8 Cir., 1940, 116 F.2d 609, 612; Cox v. United States, 8 Cir., 1938, 96 F.2d 41; Fielder v. United States, 8 Cir., 1915, 227 F. 832, 833, and the authorities cited. Cf. Arrington v. Robertson, 3 Cir., 1940, 114 F.2d 821, 823; Snyder v. Lehigh Valley Railroad Co., 3 Cir., 1957, 245 F.2d 112. Cf. also Fillippon v. Albion Vein Slate Co., 1919, 250 U.S. 76, 39 S.Ct. 435, 63 L.Ed. 853.

The judgment of conviction will be reversed and the case will be remanded with the direction to enter a judgment of acquittal.