**UNITED STATES of America**
**v.**
**Belmont KERESTY, Thomas Earl Phillips.**
**Crim. No. 70–108.**

United States District Court,
W. D. Pennsylvania.
Nov. 10, 1971.

Blair A. Griffith, First Asst. U. S. Atty., Pittsburgh, Pa., for plaintiff.

Samuel J. Reich, Pittsburgh, Pa., for Belmont Keresty.

H. David Rothman, Pittsburgh, Pa., for Thomas Earl Phillips.

## OPINION

TEITELBAUM, District Judge.

On April 23, 1971, the defendant Belmont Keresty was convicted on one count of violating 18 U.S.C. § 892,[1] one count of violating 18 U.S.C. § 894,[2] and one count of violating 18 U.S.C. § 1952,[3] and the defendant Thomas Earl Phillips was convicted on one count of violating 18 U.S.C. § 894. Both defendants have moved for judgment of acquittal or, alternatively, for a new trial. Between them the defendants assign as reasons in support of their motions the following: (1) a violation of the Extortionate Extension of Credit Act[4] was not established, (2) if a violation was established, the Act is unconstitutional, (3) the Court's refusal to instruct the jury as to the gambling laws of Pennsylvania was erroneous, (4) the Court's instruction to the jury as to the participation by the defendant Phillips was erroneous, and (5) the evidence was insufficient to submit the case to the jury.

Factually, of course, the evidence must be viewed in the light most favorable to the Government. Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942). In that light the testimony clearly establishes the com-

1. Section 892(a) makes it unlawful to make any "extortionate extension of credit". Section 891(6) defines an extortionate extension of credit as " * * * any extension of credit with respect to which it is the understanding of the creditor and the debtor at the time it is made that delay in making repayment or failure to make repayment could result in the use of violence or other criminal means to cause harm to the person, reputation, or property of any person."

2. Section 894(a) makes it unlawful to " * * * knowingly participates in any way * * * in the use of any ex-

tortionate means * * * to collect or attempt to collect any extension of credit." Section 891(7) defines extortionate means to mean " * * * any means which involves the use, or an express or implicit threat of use, of violence or other criminal means to cause harm to the person, reputation, or property of any person."

3. Because Keresty's testimony amounted to an admission of the commission of a violation of 18 U.S.C. § 1952 (Travel Act), his conviction thereunder will not be herein considered.

4. 18 U.S.C. §§ 891–896.

missions of the crimes with which the defendants were charged. On August 18, 1969, the defendant Keresty and one Louis Capo engaged in a dice game. Whether or not the game was for fun or for real was contested, but is substantively unimportant. At the conclusion of the game, Keresty indicated to Capo that he would return the following day to collect his winnings. The next day he returned and demanded $8,000.00 from Capo, assertedly the amount which he understood he had won. Capo disputed the claim and told Keresty that the game had been for fun and that in any event he didn't have that kind of money. Keresty told Capo that he would have to get the money somewhere. Apparently no threats of violence were made at the time of this exchange.

However, Keresty persisted in his demand, and when Capo failed to satisfy the claim, Keresty enlisted the aid of the defendant Phillips. At the least, Phillips' role was to stand silently and intimidatingly by, while Keresty represented Phillips to Capo as "Tony" from the "syndicate" and threatened Capo with physical harm if the money wasn't promptly paid. The payment of the debt was continually deferred to allow Capo to come up with the money until finally, the threat overhanging, Capo settled with Keresty for $2,000.00.

■■ Section 891 of the Act defines *extension of credit* to mean,

" \* \* \* to make or renew any loan, or to enter into any agreement, tacit or express, whereby the repayment or satisfaction of any debt or claim, whether acknowledged or disputed, valid or invalid, and however arising, may or will be deferred."

This broad definition explicitly embraces the instant tacit agreements between Keresty and Capo whereby the satisfaction of Keresty's disputed claim was deferred. Thus a violation of § 892 was established. Nor is it doubted that the evidence established a violation by both Keresty and Phillips of § 894.

The defendants argue that the instant application of §§ 892 and 894 is unrea-

sonably literal. They argue that the Act was intended to make unlawful those activities colloquially classified as "loan-sharking". The language which structures the Act, however, is clear and precise. If it is broad, it is broad for the purpose of assuring that its application is not limited to traditional conceptions. It proscribes specific rather than generic activities. And it is the specific activities with which Keresty and Phillips were charged which were within its proscriptions, however unconventional.

■ Alternatively, the defendants argue that if the activities established by the evidence are within the proscriptions of the Act, it is unconstitutionally broad absent a showing that those particular activities affect interstate commerce. In Perez v. United States, 402 U.S. 142, 91 S.Ct. 1357, 28 L.Ed.2d 686 (1971), the Supreme Court confronted and rejected that very argument. There, the Court held, (1) that since Congress may judge a purely intrastate extortionate credit transaction to affect interstate commerce, the Act was within the province of Federal power under the Commerce Clause of the Constitution, and (2) quoting Maryland v. Wirtz, 392 U.S. 183, 88 S.Ct. 2017, 20 L.Ed.2d 1020 (1968), that,

"[W]here the *class of activities* is regulated and that *class* is within the reach of federal power, the courts have no power 'to excise, as trivial, individual instances' of the class." (Emphasis in original)

Thus the constitutionality of the Act is settled as is the constitutionality of its application to an instance in which the extortionate credit transaction is purely intrastate.

■ Additionally, the defendant Phillips assigns as error (1) the Court's refusal to instruct the jury as to the gambling laws of Pennsylvania and (2) the Court's instruction to the jury as to Phillips' passive conduct. The Court's refusal to instruct the jury as to the

gambling laws of Pennsylvania was to obviate the injection into the trial of a purely collateral matter. Whether or not the dice game was lawful or unlawful under the laws of Pennsylvania was irrelevant. The Court did instruct the jury, however, that for purposes of assessing the general credibility of Capo, it was permissible to consider whether or not Capo knew or believed that engaging in a dice game for real was a violation of Pennsylvania law and whether or not that knowledge or belief influenced his testimony as to the nature of the game. This was all that was necessary.

■■ The instruction of the Court as to the conduct of Phillips was that Phillips was to be convicted if it was found that he stood passively by when he either knew or should have known that by his mere presence he was lending silent support to Keresty. The assignment of error is not that that was an incorrect statement of the law, but that it was at variance with what the Government sought to prove.[5] The proof, however, was embodied in all of the evidence introduced, and notwithstanding the Government's contention that Phillips' participation was active, that Phillips' participation was passive was supported by Phillips' own testimony. Moreover, the indictment of Phillips broadly charges that he, along with Keresty, expressly and *implicitly* threatened the use of violence, and in no way precludes proof of passive participation by Phillips. See United States v. Kram, 247 F.2d 830 (3rd Cir. 1957). Both of Phillips' contentions therefore must be rejected.

Finally, that the evidence was sufficient for submission to the jury is indisputable.

An appropriate Order will be entered.

---

5. Procedurally, since this portion of the charge was not objected to before the jury retired, it may not be assigned as error. F.R.Cr.P. 30. Nonetheless, it will be considered on its merits since it has none.