**UNITED STATES of America, Appellant,**

v.

**Eugene FRANKEL, Appellee.**

**No. 83–1161.**

United States Court of Appeals, Third Circuit.

Argued Sept. 14, 1983.

Decided Nov. 22, 1983.

permit a partial new trial. *See Vizzini v. Ford*

Peter F. Vaira, U.S. Atty., Walter S. Batty, Jr., Asst. U.S. Atty., Robert E. Welsh, Jr. (argued), Asst. U.S. Atty., Philadelphia, Pa., for appellant.

Richard A. Sprague, William R. Herman (argued), Sprague & Rubenstone, Philadelphia, Pa., for appellee.

Before WEIS, HIGGINBOTHAM, and SLOVITER, Circuit Judges.

**OPINION OF THE COURT**

WEIS, Circuit Judge.

The district court concluded that an indictment charging mail fraud in a check kiting operation was faulty because it relied on an implied representation in the presentation of an N.S.F. check. We affirm in the circumstances here, but caution that the mail fraud statute may be violated even in the absence of active misrepresentations.

Defendant Eugene Frankel was charged with nine counts of mail fraud and one count of wire fraud for operating a check kiting scheme. The district court dismissed the indictment on the ground that presentation of a check not secured by adequate funds does not constitute a misrepresentation. The dismissal was without prejudice to the government's right to obtain a superseding indictment.

Paragraph 6 of the indictment charges that defendant devised a scheme to defraud two banks of "money and interest on the use of money by means of false and fraudulent pretenses, representations and promises." Defendant was the president of Linens Unlimited which had corporate check-

*Motor Co.,* 569 F.2d 754, 760 (3d Cir.1977).

ing accounts at the Continental Bank in Fort Washington, Pennsylvania, and the Commerce Bank of New Jersey in Marlton, New Jersey. He also maintained a personal account at the New Jersey bank under the name of "Gene F. Estates."

Subsequent paragraphs of the indictment alleged that defendant wrote checks on the Linens and the Estates accounts in the New Jersey bank when neither contained sufficient funds to cover the checks. The checks were deposited in the Continental Bank in Pennsylvania creating an artificial balance against which additional checks were then drawn to pay Linens' creditors.

As part of the alleged scheme, defendant made telephone calls to the New Jersey bank to determine the balance in his accounts and to ask that bank employees delay returning the N.S.F. checks to the Continental Bank in Pennsylvania. Meanwhile, N.S.F. checks were written on Continental Bank and deposited in the New Jersey bank to inflate the account balances and cause the N.S.F. checks to be paid by the New Jersey bank.

The mail fraud statute was invoked because defendant caused the N.S.F. checks to be mailed, and the wire fraud statute was triggered by his use of the telephone to delay return of the checks.

At a hearing on a motion for a bill of particulars, defense counsel requested that the government identify the false pretenses referred to in the indictment. The government responded that the "false and fraudulent pretenses, representations and promises" listed in the indictment were:

1. The deposit of checks in the bank when the defendant knew that at the time of processing for payment there would be "insufficient funds to support the checks, thus constituting a false pretense that the checks were and would be supported by sufficient funds."

2. The use of various means to delay processing of the checks for payment by causing the New Jersey bank employees to violate the bank's policies and by improperly endorsing the checks to prevent expeditious processing. These tactics were alleged as constituting a breach of defendant's duty, as well as his implicit representation as an account holder, "not to manipulate the banking channels."

The district court concluded that the government had chosen to charge a "scheme or artifice" under the mail fraud statute, 18 U.S.C. § 1341 (1976), "to be accomplished by false and fraudulent pretenses, representations, and promises." The district judge observed that in *United States v. Pearlstein*, 576 F.2d 531 (3d Cir. 1978), this court apparently viewed a fraudulent representation as an integral part of a section 1341 unlawful scheme. Since the checks, under the rationale of *Williams v. United States*, 458 U.S. 279, 102 S.Ct. 3088, 73 L.Ed.2d 767 (1982), could not constitute the misrepresentations *Pearlstein* apparently required, the district court felt compelled to dismiss the indictment. The district judge concluded his opinion by saying, "This of course is not to say that an indictment under section 1341 can never be returned in a check kiting scheme of some sort."

The mail fraud statute proscribes a broad range of activity, *Durland v. United States*, 161 U.S. 306, 313, 16 S.Ct. 508, 511, 40 L.Ed. 709 (1896), and permits federal prosecution when the mails are used to further the purpose of the activity, *United States v. Maze*, 414 U.S. 395, 405, 94 S.Ct. 645, 651, 38 L.Ed.2d 603 (1974). In pertinent part, the statute reads: "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises . . . [and] for the purpose of executing such scheme . . . places in any post office . . . any matter . . . to be sent or delivered by the Postal Service . . . shall be fined . . . or imprisoned . . . or both." 18 U.S.C. § 1341 (1976).

As the district court determined and the government recognizes, the indictment in this case is based on allegations of obtaining money or property—here interest free loans—by means of false or fraudulent pre-

tenses. The purported representations are the existence of adequate funds in the accounts to cover each check written. But, defendant did not explicitly make the representations; rather, they are alleged to be implicit in the presentation of the checks.

In *Williams v. United States,* the Supreme Court rejected the notion that a false statement is made by presenting for deposit a check not backed by sufficient funds. The Court said that "technically speaking, a check is not a factual assertion at all, and therefore cannot be characterized as 'true or false.'" 458 U.S. at 284, 102 S.Ct. at 3092. It follows, therefore, that the indictment here has not set forth statements constituting misrepresentations.

In the district court the government also identified the defendant's telephone statements as false representations intended to induce bank employees to delay transmission of the checks. This activity allegedly breached his duty to not manipulate banking channels. The prosecution repeats that argument on appeal and contends that a scheme to defraud using the defendant's tactics comes within the meaning of "pretenses, representations, and promises." The government cites no authority for its proposition that manipulation of the banking channels is per se a criminal offense. Moreover, the indictment does not describe how the defendant's statements are false or fraudulent representations. Although this portion of the prosecution's case was not discussed in the bench opinion, the court obviously placed the challenged activity in the same category as presentation of the checks.

We find no error in the dismissal of the indictment as drawn, because it relies on a misrepresentation theory unsupported by the allegations. Although *Williams* involved prosecution under a different statute, the Supreme Court's holding—that the presentation of a check is not a representation or statement of any kind—is fatal to the government's theory here.

*Williams* is the obvious hurdle that the government is unable to overcome, but dictum in our earlier case of *United States v.* *Pearlstein,* 576 F.2d 531 (3d Cir.1978), underlies the prosecution's difficulty. The government's and the district court's reading of that case forced the prosecution into a position it probably would not have taken otherwise.

*Pearlstein* involved a fraudulent scheme to sell distributorships for a direct-mail-marketing firm. The evidence demonstrated the defendant's deliberate use of false and misleading statements, aliases, fictitious names, forged signatures, fabricated excuses and "lulling" letters. On that record, this court found ample evidence of a fraudulent scheme. Observing that the statutory "scheme to defraud ... is not defined according to any technical standards," we said that "[t]he scheme need not be fraudulent on its face ... but must involve some sort of fraudulent misrepresentations or omissions reasonably calculated to deceive persons of ordinary prudence and comprehension." 576 F.2d at 535. The district court recognized the misrepresentation requirement as dictum but felt obligated to follow it, particularly since the prosecution had cast the indictment in terms designed to track the *Pearlstein* language.

*Pearlstein,* however, should not be read so narrowly. In that case, the record established a scheme to defraud by means of false representations. No need arose to distinguish situations where the fraudulent scheme might be implemented by means other than a misrepresentation. The basic question presented here, which was not at issue in *Pearlstein,* is whether the statute should be read so that "by means of false or fraudulent pretenses, representations or promises"—the wording following "obtaining money by false pretenses"—also limits the "scheme or artifice to defraud" language set out in the first clause. Specifically, the question is whether a fraudulent scheme executed without a misrepresentation is within the scope of the statute.

As originally enacted, the mail fraud statute did not contain the reference to "obtaining money ... by ... fraudulent pretenses ..." and spoke only to schemes or artifices to defraud. The second clause

referring to obtaining money by false pretenses was added in 1909 as a result of the Supreme Court holding in *Durland v. United States,* 161 U.S. 306, 16 S.Ct. 508, 40 L.Ed. 709 (1896). There, the Court rejected the validity of a defense to the crime of obtaining money by false pretenses charged under the statute, because defendant had only made a false promise, not a misrepresentation of an existing fact. The defense available at common law, therefore, cannot be asserted as a defense to mail fraud, and thus the 1909 change expands the reach of the statute. *United States v. Young,* 232 U.S. 155, 34 S.Ct. 303, 58 L.Ed. 548 (1914).

Although the added clause was intended to identify and proscribe a particular course of conduct, it does not follow that the first and more general clause was restricted by the amendment. Various courts of appeals have stated that the "scheme to defraud" and the "for obtaining money" clauses are to be read separately. *See United States v. Scott,* 701 F.2d 1340, 1343–44 (11th Cir. 1983); *United States v. Margiotta,* 688 F.2d 108, 121 (2d Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 1891, 77 L.Ed.2d 282 (1983); *United States v. Halbert,* 640 F.2d 1000, 1007 (9th Cir.1981); *United States v. States,* 488 F.2d 761, 764 (8th Cir.1973), *cert. denied,* 417 U.S. 909, 94 S.Ct. 2605, 41 L.Ed.2d 212 (1974).

In *Halbert,* the court gave the statute a disjunctive reading, and held that "[a] defendant's activities can be a scheme or artifice to defraud whether or not any specific misrepresentations are involved." 640 F.2d at 1007. *See also United States v. Townley,* 665 F.2d 579, 585 (5th Cir.), *cert. denied,* 456 U.S. 1010, 102 S.Ct. 2305, 73 L.Ed.2d 1307 (1982); *United States v. Bruce,* 488 F.2d 1224, 1229 (5th Cir.1973), *cert. denied,* 419 U.S. 825, 95 S.Ct. 41, 42 L.Ed.2d 48 (1974); *Silverman v. United States,* 213 F.2d 405, 407 (5th Cir.1954); *Fournier v. United States,* 58 F.2d 3, 5 (7th Cir.1932).

Older cases in this court are in agreement. In *United States v. Kram,* 247 F.2d 830 (3d Cir.1957), Judge Biggs noted that "[a] mail fraud indictment may or may *not*

allege that the solicitation was so drawn as to be intentionally misleading. If the latter, it is sufficient if an intent to defraud is found by the jury to exist . . . even though the material itself in the opinion of the jury is completely ineffective to deceive anyone." *Id.* at 832 (emphasis in original). In *Kaufmann v. United States,* 282 F. 776 (3d Cir.), *cert. denied,* 260 U.S. 735, 43 S.Ct. 96, 67 L.Ed. 488 (1922), this court stated, "If a scheme is devised with the intention of defrauding, and the mails are used in executing it, it makes no difference that there is not a misrepresentation of a single existing fact." *Id.* at 779.

More recently, in *United States v. Boffa,* 688 F.2d 919 (3d Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 1272, 75 L.Ed.2d 494 (1983), we joined those courts of appeals that have not confined the mail fraud statute to schemes aimed at deprivation of money or property. We recognized that "a scheme to deprive persons of intangible rights or interests may be within the ambit of 18 U.S.C. § 1341." 688 F.2d at 926. More specifically, we held that a scheme to deprive employees of the loyal, faithful, and honest services of their union officials comes within the scope of the scheme or artifice clause of the statute. *Id.* at 931. Similarly, a plan to deprive an individual of the economic benefits contained in a collective bargaining agreement was found to be within the scope of the statute. *Id.* at 930.

The misrepresentation factor was not an issue in the *Boffa* opinion. However, the courts that have accepted the notion that a deprivation of intangible rights is within the statute, recognize that an active misrepresentation is not necessary. Instead, the prosecution need prove only a recognizable scheme formed with intent to defraud regardless of how that intent manifests itself in execution. *United States v. Bohonus,* 628 F.2d 1167, 1172 (9th Cir.1980). For example, a public official engaged in bribery by mail need not actively make any misrepresentations in order to violate section 1341.[1] *See, e.g., United States v.*

---

1. *But see,* Comment, "The Intangible-Rights Doctrine and Political-Corruption Prosecutions

*Isaacs,* 493 F.2d 1124, 1149–1151 (7th Cir. 1974). Although *Boffa* did not discuss the disjunctive reading of the statute, that decision is not inconsistent with our position here and indeed tends to be in agreement.

■ In sum, the opinions of this court lend support to the proposition that "scheme or artifice to defraud" is to be read independently of "obtaining money by false pretenses." The government's reading of the *Pearlstein* dictum, while understandable, is nonetheless erroneous. Schemes to defraud come within the scope of the statute even absent a false representation.

We do not wish to be understood as endorsing an overly expansive theory of the breadth of section 1341. The statute does not encompass every suspect scheme. As Chief Judge Seitz cautioned in *Boffa,* "We do not believe that mail fraud prosecutions based on this theory are boundless, however, and we may not extend the reach of 18 U.S.C. § 1341." 688 F.2d at 926. Accordingly, at this juncture, we say no more than that a scheme need not include false representations to violate the scheme or artifice clause of section 1341.[2]

Our explanation of *Pearlstein* and disjunctive reading of section 1341 do not require that we reverse the district court's order. The indictment charges defendant with misrepresentations and therefore we must assume that the grand jury based its allegations on that premise. Since the government chose to rely on misrepresentations, it must prove them. *United States v. Kram,* 247 F.2d 830, 832–33 (3d Cir.1957). *Williams* prevents successful proof here, and thus the indictment was properly dismissed. Whether the prosecution can secure a valid superseding indictment on a different theory, we do not decide. Although our discussion has addressed only

the mail fraud statute, the same principles apply to the wire fraud violation. *See United States v. Tarnopol,* 561 F.2d 466, 475 (3d Cir.1977).

The order of the district court will be affirmed.

SLOVITER, Circuit Judge, concurring.

I agree with the judgment of the majority to affirm the dismissal of the indictment as drawn because it has not set forth statements constituting misrepresentation, and join in that portion of the majority's opinion which supports that holding. I also do not object to the suggestion in the majority's opinion that the government may have read our earlier opinion in *United States v. Pearlstein,* 576 F.2d 531 (3d Cir.1978), too narrowly if the government assumes that every mail fraud indictment must be based on an active misrepresentation of an existing fact. I write separately because the majority's opinion extends further than necessary to decide the case before us and because the rule of law it seeks to propound, that "[s]chemes to defraud come within the statute even absent a false representation", majority op. at 921, has been neither briefed nor argued by the parties. I am sympathetic to the majority's apparent wish to redress what it believes was the mischief of the dictum in *Pearlstein.* But in fighting dictum with what is at most other dictum, the majority raises more questions than it answers.

The language of the mail fraud statute, 18 U.S.C. § 1341, makes criminal the devising of "any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises." Although it is evident that the first two clauses of § 1341 must be read in the disjunctive, it is not clear from

Under the Federal Mail Fraud Statute," 47 U.CHI.L.REV. 562 (1980), arguing that the intangible rights theory was not intended by Congress and that it is inconsistent with the "for obtaining money by false or fraudulent pretenses" clause. We note, however, that to the extent that *Durland* eliminates a common law defense, the amendment expands, rather than

contracts the scope of the statute as the Comment argues.

**2.** For contrasting views on the interpretation of the mail fraud statute, *compare* Hurson "Limiting the Federal Mail Fraud Statute—A Legislative Approach", 20 AM.CRIM.L.REV. 423 (1982), *with* Rakoff, "The Federal Mail Fraud Statute", 18 DUQ.L.REV. 771 (1980).

the statutory language whether a scheme or artifice "to defraud" within the statutory meaning must be based on a misrepresentation either because that language is modified by the clause "by means of false or fraudulent pretenses, representations or promises" or because the term "defraud" in itself incorporates some element of deceit.

The language of *Pearlstein* posited merely that § 1341 requires "some sort of misrepresentations *or omissions* reasonably calculated to deceive persons of ordinary prudence and comprehension." 576 F.2d at 535 (emphasis added). Although we have cited *Pearlstein* for the proposition that the statute prohibits "all schemes to defraud by any means of misrepresentation that in some way involve the use of the postal system," *see United States v. Boffa*, 688 F.2d 919, 925 (3d Cir.1982), we were not there focusing on the nature of the misrepresentation. In fact, *Pearlstein* left open a considerably broader view of the statute as encompassing, as noted above, "omissions reasonably calculated to deceive" as well as "misrepresentations." It is true that the earlier cases of this court cited by the majority suggest that a scheme to defraud does not require an affirmative misrepresentation, but the holdings in those cases are not inconsistent with this language in *Pearlstein*.

The majority seems to suggest that the statutory language "schemes to defraud" does not require any misrepresentation— whether affirmative or by omission. Not all the cases the majority relies on accept this broad construction. For example, in *United States v. Halbert*, which the majority quotes at page 920 for the proposition that no specific misrepresentation need be proven, the court also stated, in apparent contradiction, "Even if the Government had not established one or more of the six acts of misrepresentation involved in this case, sufficient proof *of even one of the acts* would have been enough to support Halbert's conviction for mail fraud." 640 F.2d 1000, 1008 (9th Cir.1981) (emphasis added).

The majority apparently is motivated by a desire to signal the district courts and the government that it will be receptive to a broader reading of the mail fraud statute than the government employed in this case. However, its failure to limit or define "schemes to defraud" may leave open the construction that even a deceitful omission is not required. This court may ultimately adopt such a broad construction of the statute. But that should be only after plenary consideration in an adversary context.