**UNITED STATES of America, Appellee,**

v.

**Donald J. CLAUSEN, Appellant.**

No. 85–5225.

United States Court of Appeals,
Eighth Circuit.

submitted Feb. 10, 1986.

Decided May 28, 1986.

Douglas B. Altman, St. Paul, Minn., for appellant.

Thorwald H. Anderson, Jr., Minneapolis, Minn., for appellee.

Before LAY, Chief Judge, ROSS and WOLLMAN, Circuit Judges.

LAY, Chief Judge.

Donald Clausen was convicted of three counts of wire fraud in connection with commodities trading. Clausen appeals his conviction on the grounds that the indictment was fatally defective, the evidence was insufficient to prove a scheme to defraud, and the district court[1] abused its discretion in curtailing Clausen's final argument. Clausen also seeks reversal of the district court's order that Clausen pay restitution as part of his sentence, contending that the court failed to make full factual findings prior to the imposition of restitution. We find no error in the restitution order and affirm the judgment of conviction.

**Facts**

On February 27, 1985, a federal grand jury indicted Donald Clausen on three counts of wire fraud in violation of 18 U.S.C. § 1343 (1982). Clausen, a dentist, opened a trading account with the Dallas, Texas, office of Conti-Commodity Services, Inc. (Conti) in 1982. On Friday, September 30, 1983, after Clausen had moved to Minneapolis, Clausen called the Dallas office and placed a purchase order through his broker, William Thomas, for five contracts of silver futures. Clausen testified that he was experiencing severe financial difficulties at the time he placed the order and was hoping to make a profitable day trade, that is, to liquidate his position at the end of the day at a higher price. The price of silver fell throughout the day, however, and Thomas' assistant told Clausen that he would have to meet a margin call of $22,-500. Clausen said he would bring in a check to the Conti office in Minneapolis on Monday. On Monday, October 3, 1983, Clausen brought a check for $22,500 to the Minneapolis office, knowing he did not have sufficient funds in his account to cover the check.[2] Clausen then called Thomas' assistant and placed another order for five contracts of silver futures. Clausen again speculated that the price of silver would rise so that he could liquidate his ten silver contracts at the end of the day and break even. The price of silver continued to fall, however, and Clausen was faced with another margin call of $31,900. On October 5, Clausen called Thomas and said that his $22,500 check would not clear and that he could not make the second margin call. Conti immediately liquidated Clausen's ten

---

1. The Honorable Diana E. Murphy, United States District Judge for the District of Minnesota, presiding.

2. The evidence showed that Clausen had $.66 in his checking account and approximately $63 in overdraft privileges on October 3, 1983.

silver contracts, resulting in a loss of $47,-883.00.[3]

■ Clausen was indicted on three counts of wire fraud based on three separate phone calls he allegedly made from Minneapolis to the Conti office in Dallas in furtherance of the allegedly fraudulent scheme.[4] After a trial before a jury, Clausen was convicted on all three counts.

### The Indictment

Clausen first contends that the indictment is fatally defective because it charges him with a "scheme or artifice to defraud" which was accomplished by "false and fraudulent pretenses, representations and promises" in the form of passing an insufficient funds (NSF) check. The indictment is defective, Clausen alleges, because under *Williams v. United States*, 458 U.S. 279, 102 S.Ct. 3088, 73 L.Ed.2d 767 (1982), an insufficient funds check does not constitute a false statement. *See id.* at 284–85, 102 S.Ct. at 3091–92. Although *Williams* involved a prosecution for a check-kiting scheme under 18 U.S.C. § 1014 (1982), which makes it a crime to knowingly make a false statement for the purpose of influencing a financial decision of certain federal agencies, the Third Circuit extended *Williams* to the mail and wire fraud statutes in *United States v. Frankel*, 721 F.2d 917 (3d Cir.1983). In *Frankel*, the court held that an indictment charging a defendant with mail fraud based on allegations of obtaining money by means of false representations is fatally defective where the indictment alleged only that the defendant had deposited NSF checks in his bank account in order to create an artificially high balance against which checks were later drawn to pay the defendant's creditors. Under *Williams*, the *Frankel* court determined, no implicit false statement is made by knowingly presenting for deposit a

check not backed by sufficient funds. *Id.* at 919. The indictment was thus defective because it had not set forth any statement constituting a misrepresentation. *Id.*

The government argues that this case is distinguishable from *Williams* and *Frankel* because in those cases the defendant presented an NSF check for deposit. In this case, Clausen gave an NSF check to Conti in payment of an obligation. We need not decide whether *Williams* also applies where an indictment alleges that a person made a misrepresentation by knowingly giving an NSF check to a third party in payment of an obligation. We find that the indictment at issue here charged Clausen with a scheme to defraud whether or not carried out by means of a misrepresentation.

■ The wire fraud statute under which Clausen was charged provides in pertinent part:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined not more than $1,000 or imprisoned not more than five years, or both.

18 U.S.C. § 1343 (1982). Courts have construed this statute to forbid *both* schemes to defraud, whether or not any specific misrepresentations are involved, *and* schemes to obtain money or property by means of false or fraudulent pretenses, representations, or promises. *See, e.g., United States v. Frankel*, 721 F.2d at 921; *United States v. Halbert*, 640 F.2d 1000,

---

**3.** Conti secured a civil judgment against Clausen for its loss, which Conti has attempted to collect without success. Pursuant to Conti's agreement with its brokers, Thomas was personally liable to Conti for $11,538.30 of the $47,883.00 loss.

**4.** Each separate interstate telephone call in furtherance of a scheme to defraud or a scheme to obtain money by false pretenses constitutes a separate offense under 18 U.S.C. § 1343. *See United States v. Stull*, 743 F.2d 439, 444–45 (6th Cir.1984), *cert. denied,* — U.S. ——, 105 S.Ct. 1779, 84 L.Ed.2d 838 (1985).

1007 (9th Cir.1981); *cf. United States v. States*, 488 F.2d 761, 764 (8th Cir.1973), *cert. denied*, 417 U.S. 909, 94 S.Ct. 2605, 41 L.Ed.2d 212 (1974) ("scheme or artifice to defraud" and "for obtaining money or property" are to be read separately). In other words, a scheme to defraud need not include false representations to violate the wire fraud statute.

■ The indictment in this case charged Clausen with devising "a scheme and artifice to defraud and for obtaining money and property by means of false and fraudulent pretenses, representatives [sic] and promises." The indictment described the scheme to defraud as follows:

That Donald J. Clausen doing business as D.D.S., Inc. would place orders with Conti-Commodity Services, Inc. for silver (in the hope that the price of silver would go up) and would tender to Conti-Commodity Services, Inc. checks in payment of the required margin payment which Donald J. Clausen then knew were not covered and would not be covered by funds deposited at the drawee financial institution.

Unlike the indictment in *Frankel*, which charged the defendant with a scheme to defraud *by means of* false representations, each count in the indictment against Clausen charged him with a scheme to defraud *and* a scheme to obtain money by false representations. As the above excerpt from the indictment makes clear, the scheme to defraud described in the indictment does not rely on a misrepresentation. Thus, even if we were to find that giving an NSF check to a third party in payment of an obligation does not constitute a misrepresentation, the indictment is not defective because the indictment alleges in the alternative that Clausen engaged in a scheme to defraud, without reference to whether the scheme to defraud was carried out by means of a misrepresentation.

The fact that the indictment listed a scheme to defraud and a scheme for obtaining money by false representations in the conjunctive does not change this result. In *United States v. Mohr*, 728 F.2d 1132 (8th Cir.), *cert. denied*, —— U.S. ——, 105 S.Ct. 148, 83 L.Ed.2d 87 (1984), we held that where a statute specifies two or more ways in which an offense may be committed, all may be alleged in the conjunctive in one count of the indictment, and proof of any one of the acts conjunctively charged may establish guilt. *Id.* at 1135. As we discuss in Part II, the government presented sufficient evidence at trial from which the jury could find a scheme to defraud.

### Sufficiency of the Evidence

■ Clausen also challenges the sufficiency of the evidence to prove that he had intent to defraud, an essential element of a scheme to defraud. In reviewing the sufficiency of the evidence, this court must view the evidence in the light most favorable to the government and resolve all conflicts in the government's favor. *United States v. Netz*, 758 F.2d 1308, 1310 (8th Cir.1985) (per curiam); *Klein v. United States*, 728 F.2d 1074, 1075 (8th Cir.1984) (per curiam). Intent to defraud need not be shown by direct evidence; rather, it may be inferred from all the facts and circumstances surrounding the defendant's actions. *United States v. Wrehe*, 628 F.2d 1079, 1082 (8th Cir.1980). We agree with the government that the jury could reasonably infer Clausen's intent to defraud from Clausen's own testimony that he agreed to make margin payments that he knew he could not make. *See generally United States v. Widgery*, 636 F.2d 200, 202 (8th Cir.1980); *Wrehe*, 628 F.2d at 1082–83. *Cf. United States v. Nieuwsma*, 779 F.2d 1359, 1363 (8th Cir. 1985) (in concluding that there was sufficient evidence of intent to defraud to support defendant's guilty plea to conspiracy to commit mail fraud, court stated, "Nieuwsma's admission he knew the kite scheme was wrong but continued in hopes of recouping his money shows he had intent to defraud.").

### Final Argument

■ Clausen's contention that the district court improperly restricted defense counsel on final argument is also without merit. In his final argument, defense

counsel noted that the government had earlier characterized this as a "bad check case", and argued that although Clausen may have been guilty of passing a bad check under state law, he was not guilty of the federal crime of wire fraud. In support of this argument, defense counsel attempted to compare the elements of passing a bad check under Minnesota law with the elements of wire fraud by reading to the jury the elements of passing a bad check under Minnesota law.[5] The district court sustained the prosecution's objection to defense counsel's attempt to read from the state statute on the ground that state law was not material to the crime charged in the indictment. Clausen argues on appeal that this was error because the government had "opened the door" when it told the jury that this was simply a bad check case.

The district court has broad discretion to determine the scope of final argument. *United States v. Bell*, 651 F.2d 1255, 1260 (8th Cir.1981). This court will reverse a district court's ruling on final argument only upon a showing of abuse of that discretion. *Id.* We find that the district court did not abuse its discretion in preventing defense counsel from reading to the jury the elements of passing a bad check under state law. Even if we were to find that exclusion of this argument was error, however, we hold that the error was harmless. As the transcript from the final argument shows, even though the district court did not allow defense counsel to read the state statute to the jury, the district court never-

theless allowed defense counsel to argue that although Clausen might be guilty of passing a bad check under state law, he was not guilty of wire fraud.[6] Any possible error resulting from the district court's curtailment of defense counsel's final argument was thus harmless.

**Restitution**

 Clausen's final argument is that the district court erred in requiring Clausen to make full restitution to Conti and Thomas as a part of his sentence without first making the necessary findings under 18 U.S.C. § 3580(a)(1982).[7] More specifically, Clausen alleges that the district court failed to make any findings concerning Clausen's financial resources, his financial needs and earning ability, and the financial needs of his dependents (two minor children). Clausen also contends that the district court should have considered the financial resources of Conti, the corporate "victim", and the conduct of William Thomas, Clausen's broker, in determining the amount of restitution Clausen should be required to pay. We disagree.

As the government notes, the district court had before it Clausen's presentence report disclosing Clausen's financial condition when it ordered Clausen to make restitution to Conti and Thomas as part of Clausen's sentence. Clausen had an opportunity to respond to, correct, or comment on the information contained in the presentence report at the sentencing hearing. Clausen simply has not shown that the district court failed to consider all relevant

---

**5.** The Minnesota statutes governing the crime of issuing worthless checks had been attached to the "Notice of Non-Payment and Dishonor, and Demand for Payment" that Conti had sent to Clausen. The notice and the attached statutes were admitted into evidence as Defendant's Exhibit 3.

**6.** Defense counsel argued:
—if he's charged with a crime in the wrong way, if he's charged in a manner in which he didn't do those acts, then you've got to acquit him. And that's the point, folks. If all this case is is a bad check case, then they haven't proven wire fraud beyond a reasonable doubt. And when you view that evidence, ladies and gentlemen, I'd ask you to review it in light of

your common sense and experience. It's a seductive argument, folks, that all this case is is a bad check case, but it's wrong. This is a wire fraud prosecution.

**7.** The statute provides:
The court, in determining whether to order restitution under section 3579 of this title and the amount of such restitution, shall consider the amount of the loss sustained by any victim as a result of the offense, the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate.
18 U.S.C. § 3580(a).

factors before requiring Clausen to pay approximately $48,000 in restitution. Clausen's contention that the financial condition of the victim is somehow relevant to the amount of restitution an offender may be required to pay is similarly without merit. Simply because a large corporation is the victim of a fraudulent scheme is no justification for excusing restitution. Such a Robin Hood philosophy is hardly relevant to a system of justice based on equality under the law. We find no abuse of discretion in the order of restitution.

## Conclusion

For the reasons discussed above, we find that the indictment charging Clausen with three counts of wire fraud was not fatally defective, that there was sufficient evidence of Clausen's intent to defraud, and that the district court did not improperly restrict defense counsel at final argument. We also find that the district court did not abuse its discretion in requiring Clausen to pay approximately $48,000 in restitution as a part of his sentence.

The judgment of conviction is affirmed.