UNITED STATES, Plaintiff

v.

Ralph FLEMING, Defendant.

Crim. A. No. 92–608–6.

United States District Court,
E.D. Pennsylvania.

April 13, 1993.

Richard H. Anderson, Media, PA, for defendant.

Michael J. Holston, Leon J. Dobkin, U.S. Attorney's Office, Philadelphia, PA, for the U.S.

## MEMORANDUM

ROBRENO, District Judge.

Defendant Ralph Fleming was convicted by a jury on three counts of mail fraud in violation of 18 U.S.C. § 1341. The conviction arose from the defendant's involvement in a scheme to submit fraudulent claims to an insurance company for damage to his motor vehicles. Defendant has filed motions for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29(c) or for a new trial pursuant to Federal Rule of Criminal Procedure 33, seeking relief from his conviction. For the reasons set forth below, I will deny the motions.

## I. BACKGROUND

Between 1988 and 1990, emissions containing debris and various chemicals were released into the air by the Marcus Hook oil refinery of the Sun Oil Company ("Sun Oil"), causing damage to the finish of automobiles in, near, and around the area of the refinery. Sun Oil was self-insured. To administer the approximately 1,500 claims for damage resulting from these emissions, Sun Oil contracted with the Travelers Insurance Company ("Travelers"). Certain Travelers appraisers who were assigned to adjust the claims, along with certain automobile body-shop owners, designed a scheme intended to mislead Travelers into paying for the costs of repairs to vehicles that were not damaged by the refinery emissions or for inflated costs of repairs to vehicles actually damaged. The

money that Travelers paid on the fraudulent claims on behalf of Sun Oil was apportioned among the participants in each claim, typically: 1) one-third to the Travelers appraisers who wrote the claims; 2) one-third to the body-shop owners who allegedly repaired the vehicles claimed to have been damaged; and 3) one-third to the owners of the vehicles that were used as the basis of the fraudulent claims. Fleming participated in the submission of three fraudulent "appraisal" claims forms for damage to vehicles that he owned, and he received one-third of the amount that Travelers paid for each of the three claims.[1]

## II. DISCUSSION

Defendant contends that the Government failed to prove a necessary element of its case, and that the Court erred by admitting into evidence copies instead of the originals of certain documents. The defendant also claims error in the jury charge concerning the weight to be accorded character evidence and the pre-indictment destruction of documents by Government witnesses.

■ In deciding a motion for judgment of acquittal, the Court must view the evidence in the light most favorable to the Government, draw all reasonable inferences in the Government's favor, and uphold the verdict unless no rational juror could have found guilt beyond a reasonable doubt. *United States v. Skulsky*, 786 F.2d 558, 563 (3d Cir.1986). With respect to the motion for a new trial, the Court may grant a new trial only in exceptional circumstances involving a miscarriage of justice or where evidence predominates heavily against the verdict. *United States v. Bevans*, 728 F.Supp. 340, 343 (E.D.Pa.), *aff'd*, 914 F.2d 244 (3d Cir.1990); *see also United States v. Rush*, 749 F.2d 1369, 1371 (9th Cir.1984). I will address each of the defendant's contentions *seriatim*.

A. *Failure to Establish a Necessary Element of the Case.*

Fleming first argues that the Government was required, but failed, to prove that the

---

1. The amounts that Travelers paid for the three claims for Ralph Fleming's vehicles were $3,710.00, $3,985.60, and $4,483.27.

appraisal claims forms contained the misrepresentation that emissions from the Marcus Hook refinery damaged his vehicles, as alleged in the indictment. Paragraph 12 of the indictment states, "Travelers appraisers would and did write fraudulent appraisals, which falsely represented that automobiles at Ken's Auto Body had been damaged by the Marcus Hook Refinery, when these automobiles had no such damage." Fleming contends that because the Government chose to rely on this allegation as the basis for his offenses, the Government must show that the three appraisal claims forms submitted to Travelers state literally that the defendant's automobiles were "damaged by the Marcus Hook Refinery." If the defendant is correct that the appraisal forms must contain these exact words in order to sustain the jury's guilty verdict, then defendant's motions would have merit, as the forms undisputedly do not contain such words. Fleming's challenge fails for at least two reasons.

1. The Government has offered sufficient evidence to prove the allegations of paragraph 12 of the indictment.

■ Assuming *arguendo* that the Government needed to prove the allegations of paragraph 12 of the indictment in order to sustain the conviction, the Court concludes that the Government offered sufficient evidence at trial to prove these allegations. Paragraph 12 of the indictment alleges that the appraisals "falsely represented" the vehicles had been damaged by the Marcus Hook refinery, not that the forms themselves explicitly stated those words. Fleming relies upon the Third Circuit's decision in *United States v. Frankel*, 721 F.2d 917 (3d Cir.1983), for the proposition that when the Government has chosen to rely upon a misrepresentation as one of the elements of an indictment under the mail fraud statute, the Government must show that the defendant "explicitly" made that misrepresentation. *See* Memorandum of Law in Support of Post Trial Motions at 7–8. *United States v.*

*Frankel* involved the dismissal of an indictment which charged mail fraud in connection with a check kiting scheme. *See* 721 F.2d at 917. In *Frankel*, the Government had alleged that the presentation of checks to banking institutions constituted "implicit" misrepresentations of "the existence of adequate funds in the accounts to cover each check written." *Id.* at 919.

Contrary to Fleming's interpretation of *Frankel*, the Third Circuit did not affirm the district court's dismissal of the indictment on grounds that implied misrepresentations cannot form the basis of a violation of the mail fraud statute. Instead, the *Frankel* indictment was dismissed because the presentation of a check in and of itself is not a factual representation capable of characterization as true or false. *See Frankel*, 721 F.2d at 919 (relying on *Williams v. United States*, 458 U.S. 279, 284, 102 S.Ct. 3088, 3092, 73 L.Ed.2d 767 (1982)). Therefore, the Government could not prove any misrepresentations under the indictment, whether explicit or implicit. *See id.* In contrast, the representations contained in the appraisal forms submitted by Fleming, i.e., that the automobiles at Ken's Auto Body were damaged by the Marcus Hook refinery, are capable of characterization as true or false. To put it another way, while the representations contained in the *Frankel* checks were neither true nor false (in the absence of the "implicit" representation of the existence of adequate funds to cover the checks), the very representations contained in the appraisal forms in the present case were false on their faces. While it is true, as the defendant points out, that the Government must prove the misrepresentations that it chooses to charge in the indictment, *see Frankel*, 721 F.2d at 921, *Frankel* does not require that the Government prove that the false representations described in paragraph 12 of the indictment appear verbatim on the faces of the appraisal forms.[2]

2. Government Exhibits 1–3 are duplicates of the appraisal forms for the claims involving defendant Ralph Fleming, whereas Government Exhibit 4 is an appraisal form offered into evidence against Ralph Fleming's co-defendant Michael Luczyszyn. The two defendants were tried together. Count 19 of the indictment charged Mi-

chael Luczyszyn with mail fraud; counts 20–22 of the same indictment charged Ralph Fleming with mail fraud.

Unlike Government Exhibits 1–3, Government Exhibit 4 contains the notation "damage by chemical blow-off." Gov.Ex. 4. Fleming argues

■ Absent such a literal requirement, the Court finds ample evidence on the record through which the Government proved at trial that the appraisal forms misrepresented that the defendant's automobiles at Ken's Auto Body were damaged by the Marcus Hook refinery. The appraisal forms themselves facially identified the owner of the vehicles (Fleming), the insured for the claims (Sun Oil), and the type of repairs supposedly required. *See* Gov.Exs. 1–3. The forms further identified the body-shop for the repairs (Ken's Auto Body), the address of the vehicle owner (Marcus Hook[3]), and the insurance carrier to whom the claims were submitted (The Travelers Insurance Companies[4]). *See id.*

Moreover, testimony concerning the context in which the forms were submitted to Travelers showed that the forms were specifically meant to be representations that these automobiles had been damaged by Sun Oil's Marcus Hook refinery. For example, Richard Melton, the Travelers appraiser who wrote the appraisal forms admitted as Government Exhibits One through Three, testified that when Sun Oil's Marcus Hook refinery had major chemical spills in the summer of 1988 and on August 20, 1989, he wrote the phony claims for Ralph Fleming's vehicles as part of his assignment to write the claims for

that such words made Exhibit 4 an explicit misrepresentation conforming with the misrepresentation alleged in the indictment against Luczyszyn, in contrast to Exhibits 1–3 that were offered against Fleming himself. This argument is inconsistent, however, with Fleming's position that the appraisal forms must contain the explicit misrepresentations as written in the indictment. If the defendant would have the Court determine as a matter of law that the exact words contained in the indictment must appear on the face of the appraisal forms, then Exhibit 4 would also have been deficient evidence, contrary to the defendant's argument. Exhibit 4, like Exhibits 1–3, does not expressly state "damaged by the Marcus Hook Refinery," nor does the indictment expressly allege the misrepresentation "damage by chemical blow-off." Defendant does not explain why Exhibit 4 may be construed as sufficiently explicit, but Exhibits 1–3 may not. Moreover, it is unclear what rule of law defendant would have the Court apply in determining that Exhibit 4 adequately conforms with the misrepresentations alleged in the indictment, but that Exhibits 1–3 do not.

3. Richard Melton testified that if a claim was made for a vehicle that was located or registered in the Marcus Hook area, the appraisal form did not need to indicate on its face why the car was in Marcus Hook during one of the refinery's periods of emissions. *See* Trial Tr. of Jan. 13, 1989, Doc. No. 119, at 62 (testimony of Richard Melton). That is to say, when he submitted to Travelers an appraisal form for the insured Sun Oil that stated that the vehicle at issue was located or registered in Marcus Hook, the form thereby represented to Travelers that the basis for the claim was damage from the Marcus Hook refinery emissions.

4. Defendant has also challenged the sufficiency of the Government's proof by arguing that the Government failed to prove a connection between Travelers Insurance Company, which administered the Sun Oil claims, and the Travelers subsidiary Constitution State Service Company,

which in name issued the checks on the claims. This challenge is without merit for at least two separate reasons. First, the Government need not have proven every factual allegation contained in the indictment in order to sustain the conviction. *See United States v. Miller,* 471 U.S. 130, 131–33, 136–38, 105 S.Ct. 1811, 1813, 1815–16, 85 L.Ed.2d 99 (1985). The allegations in the present indictment concern a scheme to defraud Travelers Insurance Company, and the appraisal forms explicitly state that they are appraisal forms for "The Travelers Insurance Companies." *See* Gov.Exs. 1–3. In addition, Kenneth Eline testified that the checks he received for the defendant's claims were from the Travelers Insurance Company. *See* Trial Tr. of Jan. 12, 1993, Doc. No. 96, at 36 (testimony of Kenneth Eline); *see also* Trial Tr. of Jan. 13, 1993, Doc. No. 119, at 28 (testimony of Richard Melton). Thus the Government has offered sufficient evidence of the scheme and conduct to defraud Travelers, as alleged in the indictment, even in the supposed absence of evidence of a connection between Travelers and its subsidiary.

Second, assuming that the Government had to prove a "connection" between the two companies in order to prevail, sufficient circumstantial evidence was offered to satisfy this requirement. For example, the checks that Constitution State Service Company issued explicitly stated that the company issued them as servicing agent for Sun Company. *See* Gov.Exs. 5–7. The checks were made payable to Ken's Auto Body, and they stated the name Fleming. *Id.* They each stated the year and make of a vehicle, as well as an amount payable, and this information corresponds exactly with the information on the three respective Travelers appraisal forms. Gov.Exs. 1–3, 5–7. The checks, moreover, are each dated within a week of their respective appraisal forms. *Id.* To the extent, therefore, the Government needed to prove a connection between Travelers and Constitution State Service Company, it has offered sufficient evidence for the jury to infer such a connection.

these spills. *See* Trial Tr. of Jan. 13, 1993, Doc. No. 119, at 9–10, 15–16, 21–28 (testimony of Richard Melton); *see also* Trial Tr. of Jan. 12, 1993, Doc. No. 96, at 17–18, 33–41, 134–35 (testimony of Kenneth Eline) (explaining that Melton, Eline, and Fleming submitted the fraudulent claims for Fleming's cars within the specific context of the Marcus Hook refinery spills); *cf.* Trial Tr. of Jan. 13, 1993, Doc. No. 97, at 48 (testimony of Edward Sieradzki) (explaining that the claims being made in the Marcus Hook area were the result of the Sun Oil refinery emissions).[5] Finally, two of the three checks that Travelers paid in response to the submission of the appraisals for Fleming's vehicles expressly referred to "Sun Oil—8/20," which was the date of one of the major Sun Oil Marcus Hook refinery spills that caused damage to area vehicles and generated many claims. *See* Gov.Exs. 6–7. Considering all the evidence the Government offered at trial, therefore, the evidence sufficiently supports the allegation of paragraph 12 of the indictment that the appraisal forms "falsely represented" that Fleming's automobiles were damaged by the Marcus Hook refinery.

2. The Government has additionally offered sufficient evidence to prove the allegations of paragraph 13 of the indictment.

 Fleming's challenge to the sufficiency of the Government's proof must fail for a second reason as well. In addition to the misrepresentations of paragraph 12 of the indictment that emissions from Sun Oil's Marcus Hook refinery had damaged the cars, the Government further alleged in paragraph 13 of the indictment, and proved at trial, that Travelers appraisers fraudulently "inflated" the costs of repairs. *See* Indictment ¶ 13; Gov.Exs. 1–3.[6] Proof of these misrepresentations, provided the Government has also proven all other elements of the offense, supports the conviction independently of proof of the misrepresentations that the emissions from the Marcus Hook refinery caused damage to the defendant's cars. *See United States v. Miller,* 471 U.S. 130, 131–33, 136–38, 105 S.Ct. 1811, 1813, 1815–16, 85 L.Ed.2d 99 (1985); *United States v. Georgalis,* 631 F.2d 1199, 1205 (5th Cir.1980).[7]

B. *Admission of Copies of Documents.*

Defendant maintains that the Court erred in admitting into evidence *copies* of documents relating to claims for defendant's vehicles. Specifically, the defendant contends that the Court erred in admitting into evidence Government Exhibits One through Three and Five through Seven,[8] rather than requiring that the Government produce the originals of these documents. The Court rejects this argument.

Federal Rule of Evidence 1003 controls this issue. Rule 1003 provides: "A duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the

---

5. Trial testimony is herein cited to the transcripts as filed with the Clerk. Thus, a citation to testimony includes both the date of the testimony and the docket entry number of the particular transcript containing the cited excerpt.

6. Many of the fraudulent claims submitted in the course of the Sun Oil scheme were inflated from the costs of repairs actually performed. In the case of defendant Ralph Fleming, the three fraudulent claims submitted were "inflated" from zero, in the sense that no repairs were ever performed. It would be absurd to suggest, however, that because the defendant's claims were completely fraudulent, rather than only partially false, the Government failed to prove that the costs represented on the appraisal forms for defendant Ralph Fleming's vehicles were inflated.

7. Defendant further claimed that by failing to object to the verdict slip, which recited the language from paragraph 12 of the indictment, the

Government had chosen to proceed on the sole theory that the only misrepresentation involved in the case was that the cars were damaged by the emissions from Sun Oil's Marcus Hook refinery. The defendant, however, has offered no support for the proposition that the verdict slip should override the full charge instructing the jury as to the misrepresentations that were alleged in the indictment, including both that emissions from Sun Oil's refinery damaged defendant's vehicles, and also that defendant's vehicles required repairs costing particular inflated amounts of money. *See* Trial Tr. of Jan. 14, 1993, Doc. No. 98, at 71 (jury charge).

8. Government Exhibits 1–3 are copies of the three appraisal forms submitted to Travelers for the claims for Ralph Fleming's vehicles, and Government Exhibits 5–7 are copies of the three checks issued to cover these claims. Exhibits 1–3 correspond to Counts 20–22 of the indictment, respectively, as do exhibits 5–7.

circumstances it would be unfair to admit the duplicate in lieu of the original." Fed. R.Evid. 1003; *see also FDIC v. Rodenberg*, 571 F.Supp. 455, 457–58 (D.Md.1983) (decision as to whether copies are admissible as duplicates under Rule 1003 is within trial court's discretion, and decision is one of trustworthiness and fairness). The defendant has neither raised a genuine issue as to the authenticity of the originals of Exhibits One through Three and Five through Seven, nor demonstrated why under the circumstances it would be unfair to admit the duplicates. Accordingly, there was no error in admitting into evidence these exhibits.

■ Under Federal Rule of Evidence 901, authentication "is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Fed. R.Evid. 901(a). The first example of sufficient authentication that the Rule provides is testimony of a witness with knowledge that a matter is what it is claimed to be. Fed. R.Evid. 901(b)(1). Testimony, therefore, from Richard Melton, who wrote the appraisals, and Kenneth Eline, who cashed and endorsed the checks and who owned the bodyshop that was the payee, sufficed to authenticate these exhibits. *See* Trial Tr. of Jan. 13, 1993, Doc. No. 119, at 21, 24–25 (testimony of Richard Melton); Trial Tr. of Jan. 12, 1993, Doc. No. 96, at 34–45, 111–16 (testimony of Kenneth Eline).[9]

■ Defendant, nonetheless, objects to the authentication of the exhibits on the basis that no custodian of these records from Travelers testified as to their authenticity. However, nothing in Rule 901 requires this, Fed. R.Evid. 901, and the Court may find the authentication requirement "satisfied by evidence other than testimony concerning the chain of custody." *Georgalis*, 631 F.2d at 1205–06.

■ The defendant further challenges the admission of Government Exhibit One, which consists of a copy of page one of a two-page original appraisal form, on the basis that the second page was not produced. Defendant offers no reason to suspect that the copy of page one is not identical to page one of the original. The defendant relies upon *United States v. Alexander*, 326 F.2d 736 (4th Cir. 1964), a case in which the Government offered into evidence a copy of a check, but the copy had not duplicated key terms from the original, including the name and address of the payee, and also possibly the date, amount, and other figures. *Id.* at 738 & n. 4. A Government witness instead had typed into these gaps and omissions what the Government claimed to be an accurate statement of the original terms, which themselves were "vitally material to the Government's case." *Id.* at 738–40. In this case, in contrast to *Alexander*, there is no issue of gaps or omissions on the copy admitted, nor are the material terms for which the exhibit was offered missing from the admitted page. In fact, the defendant has not suggested that the Government inserted or otherwise altered the key terms appearing on the admitted exhibit. Moreover, the defendant has neither suggested why the second page is necessary for an understanding of the information contained on the first page,[10] nor otherwise shown why, under the circumstances, it was unfair to admit the first page without a copy of the second. Therefore, the copy of what was originally page one of a two-page document was properly admitted as a duplicate of the first page. Fed.R.Evid. 1003.

*C. Jury Instructions.*

■ Defendant's remaining arguments relate to this Court's charge to the jury. First, defendant argues that this Court's instruction on character evidence was improper. Defendant contends that he was entitled to

---

**9.** Defendant's reliance upon Federal Rule of Evidence 1002 is therefore misplaced. Rule 1002 requires an original writing to prove its contents, "except as otherwise provided in these rules." Fed.R.Evid. 1002. Because Rule 1003 provides for the admission of the duplicates at issue in this case, Rule 1002 by its own terms does not bar their admission.

**10.** On the contrary, an examination of the second pages of Government Exhibits 2 and 3, which were the appraisal forms for the second and third claims for Fleming's vehicles, suggests that the second page of the original of Exhibit 1 would not have contained any information materially qualifying the terms appearing on the first page. *See* Gov.Exs. 2–3.

an instruction that evidence of good character may by itself raise reasonable doubt as to the defendant's guilt. I disagree.

In judging the adequacy of the charge, the Court must view the instructions in their entirety, and consider their general effect. *See United States v. Bey*, 736 F.2d 891, 896 (3d Cir.1984); *Ayoub v. Spencer*, 550 F.2d 164, 168 (3d Cir.), *cert. denied*, 432 U.S. 907, 97 S.Ct. 2952, 53 L.Ed.2d 1079 (1977). I am not obligated to use defendant's requested charge, *in toto*, as long as my language is sufficient to present fairly and adequately the issue to the jury. *See Link v. Mercedes–Benz of N. Am., Inc.*, 788 F.2d 918, 922 (3d Cir.1986).

During the charge conference, Fed. R.Crim.P. 30, the defendant asked the Court to supplement its proposed charge on character evidence with an instruction to the jury that character evidence *alone* may raise a reasonable doubt.[11] The Court declined the instruction, instead charging the jury with an instruction taken nearly verbatim, in relevant part, from the charge that the Third Circuit approved in *United States v. Spangler*, 838 F.2d 85, 86–87 (3d Cir.), *cert. denied*, 486 U.S. 1033, 108 S.Ct. 2018, 100 L.Ed.2d 605, *and cert. denied*, 487 U.S. 1224, 108 S.Ct. 2884, 101 L.Ed.2d 918 (1988).

The character evidence charge ultimately given to the jury was as follows:

> Each defendant has offered evidence of his good general reputation for truth, veracity, honesty and integrity and being a law-abiding citizen. You should consider such character evidence along with all the other evidence you've heard in the case when making your determination as to whether the Government has proved beyond a reasonable doubt that the defendant whose case you are considering committed the particular crime or crimes that are alleged in the indictment.

Trial Tr. of Jan. 14, 1993, Doc. No. 98, at 67 (jury charge). Under *Spangler*, the Court need not instruct the jury that character evidence alone may create a reasonable doubt that the Government has proven all elements of the offense charged. Rather, the Court need only give the jury an instruction that calls attention to its duty to take character evidence into consideration along with all other admitted evidence. *See Spangler*, 838 F.2d at 87. The Court therefore did not abuse its discretion in instructing the jury as to the weight to be accorded character evidence.

■ Defendant's second criticism of the jury instructions is that the Court failed to charge the jury that an adverse inference could be drawn against the Government because two of its witnesses, Richard Melton and Kenneth Eline, had destroyed evidence before they began cooperating with the Government. Defendant claims that Federal Rule of Evidence 1004(1) mandates such a charge under the circumstances of the case, and he also cites to *Arizona v. Youngblood*, 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988), in support of his argument.

The short answer is that neither *Youngblood* nor Federal Rule of Evidence 1004(1) requires the charge that the defendant sought. In *Youngblood*, the United States Supreme Court reversed the Arizona Court of Appeals and reinstated the trial court's conviction, holding that the defendant was

---

11. Defendant's counsel requested that the Court instruct the jury based upon a Pattern Jury Instruction from the Federal Judicial Center. However, the official commentary included with the defendant's own submitted charge expresses reservation as to whether a "stand alone" charge is required. The attachment provided by defendant states:

> Evidence of Defendant's Good Character
> You have heard the testimony of _____, who said that the defendant, _____, (has a good reputation for [*e.g.*: honesty] in the community where he lives and works) (in his opinion, is an [honest] person). Along with all the other evidence you have heard, you may take into consideration what you believe about the defendant's [honesty] when you decide whether the government has proved, beyond a reasonable doubt, that the defendant committed the crime. Evidence of the defendant's [honesty] alone may create a reasonable doubt whether the government proved that the defendant committed the crime.
>
> *Commentary*
> It is not clear that the final sentence is legally required but the Committee felt such a reference was appropriate.

See Federal Judicial Center, *Pattern Criminal Jury Instructions* ¶ 51 (1987).

required to show that the police acted in bad faith with respect to the destruction of evidence before the conviction would be reversed. 488 U.S. at 55, 57–58, 109 S.Ct. at 336–38. Federal Rule of Evidence 1004(1) permits the admission of collateral evidence of the contents of a writing if the original writing is lost or destroyed, unless the proponent of the evidence lost or destroyed the original in bad faith. Fed.R.Evid. 1004(1). Both *Youngblood* and Rule 1004(1) focus upon the bad faith loss or destruction of evidence by the proponent of the evidence, who in the present case is the Government.[12] The defendant, however, pointed to no evidence that the Government knew of, or participated in, either Melton's or Eline's destruction of records. In fact, at trial both Melton and Eline testified that they destroyed the records before they began cooperating with the Government. *See* Trial Tr. of Jan. 13, 1993, Doc. No. 119, at 4–5, 35–36 (testimony of Richard Melton); Trial Tr. of Jan. 12, 1993, Doc. No. 96, at 145–46 (testimony of Kenneth Eline). Therefore, there was neither loss or destruction of evidence by the Government, nor evidence of any bad faith on the part of the Government, which would entitle the defendant to an adverse inference instruction. *See Eaton Corp. v. Appliance Valves Corp.*, 790 F.2d 874, 878 (Fed.Cir.1986). Accordingly, there was no error in the charge to the jury.

An appropriate Order will be entered.

## ORDER

AND NOW, this 13th day of April, 1993, upon consideration of defendant Ralph Fleming's motion for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29(c) and his motion for a new trial pursuant to Federal Rule of Criminal Procedure 33, and after hearing oral argument on the motions, and for the reasons stated in the accompanying Memorandum, it is hereby OR-

DERED that the motions are both DENIED.

AND IT IS SO ORDERED.

---

**12.** In *Youngblood,* the jury charge itself was not challenged. The trial court in *Youngblood* had, in fact, charged the jury with an adverse inference instruction. However, the instruction charged was that if the jury found that the *State* had lost or destroyed evidence, they might draw an inference against the State. 488 U.S. at 54, 109 S.Ct. at 335. Furthermore, the Supreme Court based its decision in *Youngblood* on the good or bad faith of the Government when loss or destruction of evidence is "attributable to the Government." 488 U.S. at 57, 109 S.Ct. at 337.