## UNITED STATES of America, Plaintiff–Appellee,

v.

## John F. OTTO, Defendant–Appellant.

### No. 87–1898.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 10, 1987.

Decided June 27, 1988.

Kimmerly A. Klee, Swanson & Campbell, Ft. Wayne, Ind., for defendant-appellant.

David H. Miller, U.S. Atty. Office, Ft. Wayne, Ind., for plaintiff-appellee.

Before CUDAHY, COFFEY and RIPPLE, Circuit Judges.

COFFEY, Circuit Judge.

Defendant-appellant John F. Otto appeals his conviction for wire fraud, in violation of 18 U.S.C. § 1343, challenging the propriety of the district court's jury instructions. We affirm.

I.

In April 1986, Tom Schutz, an investigator for MCI Telecommunications Corporation in Chicago, notified Secret Service Agent Kurt Douglass that individuals in

the Fort Wayne, Indiana area were using MCI Personal Identification Numbers ("PINs") without proper authorization. On April 30, Agent Douglass met with Schutz and John Robinson, a part-time employee at Three Rivers Realty in Fort Wayne since January 1986. Robinson told the investigators that the president of Three Rivers Realty, John F. Otto, was using these PINs for personal and professional long-distance phone calls.

According to Robinson, Otto was receiving the PINs from Richard Rowold, a business client. In October 1985, Rowold and Otto discussed how Otto could reduce his long-distance telephone charges, and Rowold suggested using access numbers and a code number supplied by Richard Shanklin, a friend of Rowold's in Virginia. Rowold told Otto that Shanklin secured these numbers from his computer. Otto, who referred to the PINs as "trick numbers," distributed the access and code numbers to his employees and instructed them to use only "trick numbers" when placing long-distance telephone calls.

As a part of the investigation, the PINs being used by Otto and his company were removed from service by MCI. When this occurred, Otto instructed Robinson to contact Rowold for a new "trick number," and Rowold would provide one. Once, Otto personally asked Rowold to call Shanklin to get another "trick number." Rowold provided Otto with more than six PINs, usually the day the current number was removed from service.

On May 20, 1986, Agent Douglass obtained court authorization to install a pen register, which records the time, date, and telephone numbers used on a target telephone, on Otto's business phone number. The pen register tapes revealed that in a three-month period, approximately 160 long-distance phone calls using PINs, including PIN 65932 and PIN 64664, were placed from Otto's phone. The MCI subscribers who were assigned these access numbers acknowledged that they had not authorized Otto or Rowold to use their code numbers. Otto was never billed for the

use of these PINs, nor were they ever listed on his telephone bills.

Otto explained the use of the PINs in various ways. He informed Robinson that the calls were free because the code used was a satellite number that he got from Rowold, who obtained it from a friend in Virginia. Otto also instructed Robinson that if Otto's wife ever asked about the number, Robinson should tell her that it was a legal number because she did not know any different. Otto told Fred Beck, a friend who was concerned about getting caught using the number, that the number could not be traced because it was a government 800 number. Otto explained to Joe Foy, an employee at Three Rivers Realty, that it was a special charge number. Otto struck a deal with John Henry, a sales employee from WGL radio station, whereby Otto would receive free radio advertising in exchange for a service for long-distance telephone use. Otto claimed that the more phone calls one made the cheaper the bill was, and that the access numbers were purchased from this service.

Otto and Rowold were charged with wire fraud and a jury trial was held. After the witnesses testified, the district court submitted the proposed jury instructions to respective counsel and afforded the government an opportunity to object to the jury instructions. The government objected to instruction number 26, which provided:

"Two essential elements must be proved beyond a reasonable doubt to establish the offense proscribed by Section 1343 of Title 18 of the United States Code.

First, the defendant knowingly and intentionally devised or intended to devise a scheme or artifice to defraud MCI Telecommunications Corporation (MCI) or money due to it in payment for services.

Second, the defendant did so by transmitting in interstate commerce by means of wire, that is a telephone, signals or sounds for the purpose of executing the scheme or artifice to defraud MCI Telecommunications Corporation."

The government acknowledged that it had submitted this instruction, but asked that it

be withdrawn as erroneous. According to the government, instruction number 26 improperly required the government to prove that Otto had a specific intent to defraud a specific victim, MCI, when the wire fraud statute did not require such proof.

The government also objected to instruction number 30, which stated:

"Good faith is a defense to charges of wire fraud.

If you find that the acts of the Defendant in this case were done inadvertently, mistakenly or in good faith without the intention to defraud MCI Telecommunications Corporation, then the Defendant must be acquitted of the charges contained in the indictment."

The government argued that there was no evidence in the record to support such a good faith instruction. Counsel for Otto submitted that the following evidence supported giving the instruction: (1) Beck's and Henry's testimony that each obtained access numbers from Otto and used the numbers in good faith in the course of their respective businesses with no intent to violate federal law; and (2) Robinson's and Rowold's testimony that Otto did not know that the access numbers belonged to MCI and that Otto told people "that this number was a toll-free number, a government satellite number, and things of that nature." The court determined that it would give instruction number 26 as tendered, but it decided not to give instruction number 30, the good faith defense instruction.

After closing arguments, the court read the tendered instructions to the jury before deliberation. Approximately thirty-five minutes into their deliberation, the members of the jury issued a question for the judge which read, "Must determination of guilt be based on knowledge of defrauding a specific company or committing fraud in general?" The court gave the government fifteen minutes to propose a modified instruction. After hearing arguments, the court determined that it would orally give and provide a copy of the court's supplemental instruction number 26 over defense counsel's objection. This instruction stated:

"Two essential elements must be proved beyond a reasonable doubt to establish the offense proscribed by Section 1343 of Title 18 of the United States Code.

First, the defendant knowingly and intentionally devised or intended to devise a scheme or artifice to defraud. To act with 'intent to defraud' means to act knowingly and with the specific intent to deceive, ordinarily for the purpose of either causing some financial loss to another, or bringing about some financial gain to one's self.

Second, the defendant did so by transmitting in interstate commerce by means of a wire, that is a telephone, signals or sounds for purpose of executing the scheme or artifice to defraud."

Ten minutes later, the jury reached a verdict. The jury found Otto guilty of four counts of wire fraud. The district judge sentenced Otto to four concurrent five-year terms of imprisonment, the first six months to be served in confinement. The remainder of the sentence was ordered suspended with a probation term of three years commencing upon release from confinement. The court also ordered Otto to pay $2,000 restitution, a fine of $1,000 on each count, and a $50 criminal assessment.

## II.

■ Initially, Otto alleges that the district court's supplemental instruction number 26 unduly prejudiced him and therefore denied him a fair trial. According to Otto, the supplemental instruction removed his only defense—that MCI was not the target of his intent to defraud—and it conflicted with the original instruction 26, thereby confusing the jury.

In *Bollenbach v. United States*, 326 U.S. 607, 66 S.Ct. 402, 90 L.Ed. 350 (1946), the Supreme Court stated:

"Particularly in a criminal trial, the judge's last word is apt to be the decisive word. If it is a specific ruling on a vital issue and misleading, the error is not cured by a prior unexceptionable and unilluminating abstract charge.... When a jury makes explicit its difficulties a

trial judge should clear them away with concrete accuracy."

*Id.* at 612–13, 66 S.Ct. at 405. In reviewing the propriety of responses to jury questions, this court has stated that while a trial court does have a duty "to strive conscientiously to clear up any confusion," *United States v. Papia*, 560 F.2d 827, 843 (7th Cir.1977), reviewing courts usually leave to the trial judge's discretion the extent and character of the response. *United States v. Martel*, 792 F.2d 630, 637 (7th Cir.1986).

Here, Otto does not complain that the supplemental instruction was an incorrect statement of the law, but rather that it conflicted with the indictment and with the earlier instruction on the necessary elements of the offense of wire fraud. The cases on which Otto relies, however, all based reversal on the fact that the supplemental instructions there given were *incorrect* or *not responsive* to the jury's question. *Bollenbach, supra; United States v. Harris*, 388 F.2d 373, 377 (7th Cir.1967); *Powell v. United States*, 347 F.2d 156, 158 (9th Cir.1965).

In *United States v. Quintana*, 508 F.2d 867 (7th Cir.1975), this court addressed a similar challenge to a supplemental instruction, and we held that "[t]he ultimate test is whether the procedure as a whole was so likely to have confused the jury that reversal is required." *Id.* at 878 (citing *Powell*, 347 F.2d at 158). We hold that it was not, for the following reasons. First, the supplemental instruction was a correct statement of the law because under the wire fraud statute, the government was required to prove a scheme to defraud and an interstate telephone call made in furtherance of the scheme. *United States v. Freeman*, 524 F.2d 337, 339 (7th Cir.1975), *cert. denied*, 424 U.S. 920, 96 S.Ct. 1126, 47 L.Ed.2d 327 (1976). The additional language in the original instruction 26 which identified the victim of the scheme to defraud as MCI was surplusage, but was not an element the government was required to prove. Second, the fact that only the supplemental instruction, rather than the full charge in this complex case, was read clarified the specific problem raised by the

jury's question and was directly responsive thereto. Third, the jury was not under great pressure to terminate its deliberations, despite returning a verdict of guilty ten minutes after the supplemental instruction was delivered. With the supplemental instruction, the trial judge fulfilled his duty under *Bollenbach* of clearing away with "concrete accuracy" the difficulty expressed by the jury, and the procedure as a whole under these circumstances was not so likely to have confused the jury that reversal would be required. *Quintana*, 508 F.2d at 878.

### III.

■ The defendant-appellant Otto challenges the district court's refusal to give his tendered good faith instruction, arguing that his conviction should be reversed and the cause remanded with an order to include a good faith instruction. In *United States v. Martin–Trigona*, 684 F.2d 485 (7th Cir.1982), this court stated, "A defendant is entitled to have the jury instructed on his theory of the defense if the defense is supported by the law and the evidence." *Id.* at 493. The parties in this case disagree as to whether Otto's good faith instruction was supported by either the law or the evidence. On the legal issue, the appellant submits that fraudulent intent is an essential element of wire fraud, and good faith constitutes a complete defense to such specific intent crimes. *See United States v. Casperson*, 773 F.2d 216, 223 (8th Cir.1985); *United States v. Hopkins*, 744 F.2d 716, 718 (10th Cir.1984) (good faith instruction required in wire fraud cases when the evidence supports such an instruction). The government urges us to conclude that the instruction defining "knowingly" as not acting through ignorance, mistake, or accident was sufficient to cover the substance of the good faith defense.

Because Otto failed to produce any evidence at trial to support a good faith instruction, we need not reach a decision on whether such an instruction was supported by the law. Defense counsel contended at

trial that Beck's and Henry's testimony that each obtained access numbers from Otto and used the numbers in good faith in the course of their respective businesses with no intent to violate federal law was evidence to support the good faith instruction; yet this evidence is not probative of *Otto's* intent when he utilized the access numbers. Moreover, Otto's references to the access numbers as toll-free numbers or a government satellite number are not evidence of good faith, contrary to defense counsel's argument at trial, because these statements do not tend to prove that Otto inadvertently used the access numbers, that he mistakenly used the wrong access number, or that he in good faith thought he would be billed by or had purchased services from a long-distance telephone company. *See, e.g., United States v. Fowler,* 735 F.2d 823, 829 (5th Cir.1984) (good faith instruction required when some evidence presented that defendant mistakenly mailed wrong envelope, even though evidence was "weak, inconsistent, and dubious"). Because defense counsel failed to offer any evidentiary basis for his good faith defense, the district court's action in refusing to give the tendered good faith instruction was proper.

## IV.

The judgment of the district court is AFFIRMED.