**UNITED STATES of America,**
**Appellant,**

v.

**Koya OLATUNJI a/k/a "Femi Olatunji" a/k/a "Olatunji Ademoluyi".**

**No. 88–1851.**

United States Court of Appeals, Third Circuit.

Argued March 1, 1989.

Decided April 21, 1989.

---

Michael M. Baylson, Walter S. Batty, Jr., U.S. Atty., Chief of Appeals, David M. Howard (argued), Asst. U.S. Atty., Philadelphia, Pa., for appellant.

Creed C. Black, Jr. (argued), Samuel C. Milkman, Ballard, Spahr, Andrews & Ingersoll, Philadelphia, Pa., for appellee.

Before HIGGINBOTHAM, STAPLETON and COWEN, Circuit Judges.

## OPINION OF THE COURT

COWEN, Circuit Judge.

This appeal seeks review of an order of the district court dismissing Count Two of a four count indictment returned against defendant-appellee Koya Olatunji ("Olatunji"). The government contends that the district court erred in dismissing Count Two which charges Olatunji with mail fraud in violation of 18 U.S.C. § 1341. We agree and will reverse.

### I.

This case has been described as a "marriage fraud" case in which the government asserts that Olatunji "devised and intended to devise a scheme and artifice to defraud and to obtain student aid from the United States Department of Education by means of false and fraudulent pretenses and representations...." App. at 11.

The government's theory in this case is that Olatunji, a citizen of Nigeria, married a United States citizen, Sonja Wood, for the sole purpose of gaining permanent resident alien status; that Olatunji and Wood falsely represented to the Immigration and Naturalization Service ("INS") that they were living together; that they concealed from the INS that they married for the sole purpose of obtaining permanent resident alien status; and that he then obtained an Alien Registration Receipt Card (commonly known as a "green card") by submitting the false information to the INS and that he thereby received student aid to which he would not have otherwise been entitled. *Id.*

Accordingly, the government returned a four count indictment against Olatunji. Counts One, Three and Four all pertain to events which occurred in September and October of 1983, when Olatunji obtained permanent resident alien status from the INS. Count One charges Olatunji with conspiracy to make false statements and to conceal material facts from the INS in violation of 18 U.S.C. § 371 (1982). The underlying false statements are charged as a separate substantive offense in Count

Three in violation of 18 U.S.C. §§ 1001 and 2 (1982). App. at 15.

Count Four charges Olatunji with aiding and abetting Wood in presenting to the INS a falsified "Petition to Classify Status of an Alien Relative for Issuance of Immigrant Visa" in violation of 18 U.S.C. §§ 1546 and 2 (1982). App. at 17.

Count Two of the indictment, which the district court dismissed and which is the subject of the appeal, charges Olatunji with mail fraud in violation of 18 U.S.C. § 1341 (1982).

Prior to the trial, Olatunji moved, pursuant to Fed.R.Crim.P. 12(b), to dismiss Count Two. App. at 19. Olatunji argues that the indictment fails to allege an offense under section 1341 since a mail fraud offense is alleged against the Department of Education ("D.O.E.") "by means of false and fraudulent pretenses and representations," however, "the only false statements pleaded were ones made to the Immigration & Naturalization Service ... in the course of Olatunji's earlier efforts to obtain permanent resident alien status." Brief for Appellee at 2. Olatunji claims, therefore, that Count Two is fatally defective since it does not allege that "false and fraudulent pretenses and representations" were made directly to the D.O.E. App. at 24. As a holder of a green card issued by the INS, he argues that he was eligible for student aid as a matter of law. Consequently, the government could not allege that false statements were made to the D.O.E., the ultimate victim.

The district court granted the motion and dismissed Count Two without prejudice to the right of the United States to seek a superceding indictment. App. at 42. The court found the indictment defective "because the government fails to allege that any false statements were made to the Department of Education in order to obtain the aid." App. at 40. The government now appeals to this Court.

## II.

The district court's dismissal of an indictment raises a question of law over which we have plenary review. We have jurisdiction under 18 U.S.C. § 3731 (1982).

The exact language of Count Two is crucial to the resolution of this case. The text of Count Two is as follows:

## "COUNT TWO

"THE GRAND JURY FURTHER CHARGES THAT:

"1 Paragraphs one through seven of Count One are incorporated herein by reference.

"2. At all times material to this Indictment, a Pell Grant was a financial aid grant which was made from the United States Department of Education to eligible students at institutions of higher education to defray the cost of tuition and related expenses.

"3. At all times material to this Indictment, a Guaranteed Student Loan was a financial aid program for eligible students at institutions of higher education in which the United States Department of Education guaranteed to lenders that it would pay the full amount of a student's loan plus interest, in case of default, and would pay all interest and a special allowance while the student was in school and during a subsequent grace period.

"4. At all times material to this Indictment, in order to receive guaranteed student loans or Pell grants (hereinafter 'student aid'), a student was required to be a citizen or national of the United States; a permanent resident of the United States; in the United States for other than a temporary purpose and able to provide evidence from the INS of his intent to become a permanent resident; or a permanent resident of the Trust Territory of the Pacific Islands, Guam or the Northern Mariana Islands.

"5. From in or about September, 1983 through in or about August, 1986, in the Eastern District of Pennsylvania and elsewhere, defendant

KOYA OLATUNJI,

a/k/a 'Femi Olatunji,'

a/k/a 'Olatunji Ademoluyi,'

devised and intended to devise a scheme and artifice to defraud and to obtain stu-

dent aid from the United States Department of Education by means of false and fraudulent pretenses and representations, well knowing that such pretenses and representations were false and fraudulent when made.

### Plan and Purpose of the Scheme and Artifice

"6. It was the plan and purpose of the scheme and artifice for KOYA OLATUNJI to:

(a) marry a United States citizen for the sole and limited purpose of gaining the status of permanent resident alien;

(b) obtain a 'green card' by submitting false and fraudulent information to the INS concerning the marriage; and

(c) receive student aid to which he would not have been entitled were it not for his obtaining the status of permanent resident alien;

thus defrauding the United States Department of Education out of $9,586.

### Manner and Means of Carrying out the Scheme and Artifice

"7. It was part of the scheme and artifice that defendant KOYA OLATUNJI, a citizen of Nigeria, would and did approach Sonja Wood, a United States citizen, and offer her money to induce Sonja Wood to marry KOYA OLATUNJI for the sole and limited purpose of obtaining lawful permanent resident status in the United States.

"8. It was a further part of the scheme and artifice that defendant KOYA OLATUNJI and Sonja Wood would and did marry.

"9. It was a further part of the scheme and artifice that defendant KOYA OLATUNJI and Sonja Wood would and did reside apart.

"10. It was a further part of the scheme and artifice that defendant KOYA OLATUNJI and Sonja Wood would and did file and cause to be filed a 'Petition To Classify Status of Alien Relative For Issuance Of Immigrant Visa' (INS Form I-130) with the INS.

"11. It was a further part of the scheme and artifice that defendant KOYA OLATUNJI and Sonja Wood would and did file and cause to be filed an 'Application For Status As Permanent Resident' (INS Form I-485) with the INS.

"12. It was a further part of the scheme and artifice that defendant KOYA OLATUNJI and Sonja Wood would and did appear at an interview conducted by a designated examiner of the INS at Philadelphia, and that at the interview, defendant KOYA OLATUNJI and Sonja Wood would and did conceal from the designated examiner the fact that their marriage was for the sole and limited purpose of obtaining lawful permanent resident status for KOYA OLATUNJI.

"13. It was a further part of the scheme and artifice that defendant KOYA OLATUNJI and Sonja Wood would and did falsely represent on the INS Form I-130 and the INS Form I-485 and orally to the examiner at their interview that they were residing together, when in truth and in fact, as they then and there well knew, they did not and had never resided together.

"14. It was a further part of the scheme and artifice that defendant KOYA OLATUNJI would and did attempt to receive an Alien Registration Receipt Card (INS Form I-151 or INS Form I-551), commonly referred to as a 'green card,' based on his marriage to Sonja Wood, which card evidenced his admission to the United States as a lawful permanent resident alien.

"15. It was a further part of the scheme and artifice that defendant KOYA OLATUNJI would and did state in applications for student aid that he possessed a citizenship status which made him eligible to receive such aid.

"16. It was a further part of the scheme and artifice that defendant KOYA OLATUNJI would and did obtain $9,586 in student aid from the United States Department of Education for the following school years:

| SCHOOL YEAR | SCHOOL | TYPE OF AID | AMOUNT |
|---|---|---|---|
| 1984/1985 | Community College of Philadelphia | Pell Grant | $1,475 |
| 1984/1985 | Community College of Philadelphia | Guaranteed Student Loan | $1,300 |
| 1985/1986 | Community College of Philadelphia | Guaranteed Student Loan | $1,326 |
| 1985/1986 | Community College of Philadelphia | Pell Grant | $ 855 |
| 1985/1986 | LaSalle University | Pell Grant | $1,050 |
| 1986/1987 | LaSalle University | Guaranteed Student Loan | $2,500 |
| 1986/1987 | Cheyney University | Pell Grant | $1,050 |

"16 [sic]. On or about March 31, 1986, in the Eastern District of Pennsylvania, for the purpose of executing the above described scheme and artifice and attempting to do so, defendant

### KOYA OLATUNJI

did knowingly cause to be delivered by the United States Postal Service, mail matter, that is a $2,334.37 check from the PNC Education Loan Center in Pittsburgh, Pennsylvania, to Olatunji F. Ademuluti at 5060 City Line Avenue, Apartment A4, Philadelphia, Pennsylvania 19131.

"All in violation of Title 18, United States Code, Sections 1341 and 2."

App. at 10–14.[1]

As a preliminary matter, we note that the indictment charges Olatunji with mis-representations and therefore, we must assume that the grand jury based its allegations on this premise. *See United States v. Frankel*, 721 F.2d 917, 921 (3d Cir.1983). As we stated in *Frankel*, "[s]ince the government chose to rely on misrepresentations, it must prove them." *Id. See also United States v. Kram*, 247 F.2d 830, 832–33 (3d Cir.1957). Consequently, we need not consider a question arguably left open after *Frankel, United States v. Pearlstein*, 576 F.2d 531 (3d Cir.1978) and *McNally v. United States*, 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987),[2] namely, whether any false representations or omissions at all are necessary to state an offense under section 1341.[3] The district court, likewise, refused to reach this issue. App. at 41. If the government had obtained a superceding indictment omitting

1. The incorporated paragraphs from Count One, referred to above in Paragraph One of Count Two, detail the process of obtaining a "green card" from the INS and indicate that the INS relied on the statements made by Olatunji and Wood in determining whether or not to grant permanent resident status. App. at 5–6.

2. In *McNally*, the Supreme Court reversed a conviction under section 1341 and held that a scheme to defraud under this section did not extend to defrauding the citizenry of the intangible right to good government. The Court, in construing two phrases in section 1341— "scheme or artifice to defraud" and "for obtaining money or property by means of false or fraudulent pretenses, representations or promises"—concluded that, despite the use of the disjunctive form of the statute, the phrases are not independent of one another. 107 S.Ct. 2875, 2880–81.
Congress has since amended the mail fraud statute by adding, "the term 'scheme or artifice to defraud' includes the scheme or artifice to deprive another of the intangible right of honest services." Anti-Drug Abuse Act of 1988, Pub.L. No. 100–690, § 7603, 102 Stat. 4181, 4058 (1988) (now codified in section 1346 of Title 18, *see* 18 U.S.C.A. § 1346 (West Supp.1989)).

3. The majority in *Frankel* seems to suggest that the language, "schemes to defraud," does not require any misrepresentations whether affirmative or by omission. *McLendon v. Continental Group, Inc.*, 602 F.Supp. 1492, 1507 (D.N.J. 1985), interpreted *Frankel* as so holding. *But see Frankel*, 721 F.2d at 922 (Sloviter, J., concurring) ("failure to limit or define 'schemes to defraud' may leave open the construction that even a deceitful omission is not required. This court may ultimately adopt such a broad construction of the statute. But that should be only after plenary consideration in an adversary context.").

the allegation of false and misleading representations or if the language had been struck, then the issue would be squarely before us.

With regard to the sufficiency of indictments in general, this Court has recently stated that "[a]n indictment is generally deemed sufficient if it: 1) 'contains the elements of the offense intended to be charged,' 2) 'sufficiently apprises the defendant of what he must be prepared to meet,' and 3) allows the defendant to 'show[ ] with accuracy to what extent he may plead a former acquittal or conviction' in the event of a subsequent prosecution." *United States v. Rankin,* 870 F.2d 109, 112 (3d Cir.1989) (citations omitted). We stated further that "[i]t is equally well established that no greater specificity than the statutory language is required so long as there is sufficient factual orientation to permit the defendant to prepare his defense and to invoke double jeopardy in the event of a subsequent prosecution." *Rankin,* at 112 (citations omitted).

As a further criterion of sufficiency, this Court has recognized that each count of an indictment is separate and must stand on its own. *See United States v. Zauber,* 857 F.2d 137, 143–44 (3d Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 1340, 103 L.Ed.2d 810 (1989); *United States v. Markus,* 721 F.2d 442, 444 (3d Cir.1983), *cert. denied,* 476 U.S. 1144, 106 S.Ct. 2256, 90 L.Ed.2d 701 (1986); *see also United States v. Fulcher,* 626 F.2d 985, 988 (D.C.Cir.) ("Each count must stand on its own, and cannot depend for its validity on the allegations of any other count not specifically incorporated.") (citations omitted), *cert. denied,* 449 U.S. 839, 101 S.Ct. 116, 66 L.Ed. 2d 46 (1980).

As the government has elected not to obtain a superceding indictment, we must address the sufficiency of Count Two of the indictment as it is presently worded. Count Two purports to charge a violation of 18 U.S.C. § 1341, which provides:

§ 1341. Frauds and swindles

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined not more than $1,000 or imprisoned not more than five years, or both.

28 U.S.C. § 1341 (1982).

In *United States v. Pearlstein,* we stated that the elements of a section 1341 offense are "1) the existence of a scheme to defraud; 2) the use of the mails in furtherance of the fraudulent scheme; and 3) culpable participation by the defendant." 576 F.2d at 534. *See also United States v. Beecroft,* 608 F.2d 753, 757 (9th Cir.1979) ("[u]nder 18 U.S.C. § 1341, the essential elements of mail fraud are: (1) a scheme to defraud, and (2) a knowing use of the mail to execute the scheme"). In construing section 1341, we recognized in *United States v. Boffa,* 688 F.2d 919, 925 (3d Cir. 1982), *cert. denied,* 460 U.S. 1022, 103 S.Ct. 1272, 75 L.Ed.2d 494 (1983), that "[g]enerally, [the mail fraud statute] has been expansively construed to prohibit all schemes to defraud by any means of misrepresentation that in some way involve the use of the postal system." However, in construing an indictment alleging mail fraud, we will not strain to interpret a defective indictment to be in conformity with section 1341. *See United States v. Zauber,* 857 F.2d 137, 143 (3d Cir.1988). We conclude that, when read as a whole, Count Two is sufficient.

■ We must determine whether the allegations contained in Count Two constitute an offense under section 1341. Significantly, Count Two does allege that fraudulent representations were made *both* to the INS and to the D.O.E. Paragraph Five, for example, alleges that Olatunji "devised and intended to devise a scheme and artifice to defraud and to obtain student aid from the United States Department of Education by means of false and fraudulent pretenses and representations, well knowing that such pretenses and representations were false and fraudulent when made." App. at 11. Paragraph Fifteen goes on to allege that it was "part of the scheme and artifice that defendant Koya Olatunji would and did state in applications for student aid that he possessed a citizenship status which made him eligible to receive such aid." App. at 13. It is clear from the remainder of Count II that the grand jury found probable cause to believe Olatunji could not truthfully represent that he possessed a citizenship status of a kind which qualified him for student aid. We agree that "fraudulent representations, as the term is used in [section] 1341, may be effected by deceitful statements of half-truths or the concealment of material facts

and the devising of a scheme for obtaining money or property by such statements or concealments...." *United States v. Allen,* 554 F.2d 398, 410 (10th Cir.), *cert. denied,* 434 U.S. 836, 98 S.Ct. 124, 54 L.Ed. 2d 97 (1977); *see also Lustiger v. United States,* 386 F.2d 132, 138 (9th Cir.1967), *cert. denied,* 390 U.S. 951, 88 S.Ct. 1042, 19 L.Ed.2d 1142 (1968); *United States v. Perkins,* 748 F.2d 1519, 1524 (11th Cir.1984) ("the validity of an indictment is determined 'from reading the indictment as a whole and ... by practical, not technical considerations' ") (quoting *United States v. Markham,* 537 F.2d 187, 192 (5th Cir.1976), *cert. denied,* 429 U.S. 1041, 97 S.Ct. 739, 50 L.Ed.2d 752 (1977)). Only by concealing from the D.O.E. that he obtained his green card by means of false statements was Olatunji able to obtain financial aid. The statements concealed from the D.O.E. were certainly significant with respect to ascertaining Olatunji's eligibility.[4]

■ The government acknowledged during oral argument that it would have to prove at trial that Olatunji married for the purpose of obtaining student aid from the D.O.E. The government's theory was that this was a *unitary* scheme.[5] Olatunji

---

**4.** For example, 20 U.S.C. § 1091(a)(5) provides that:

> In order to receive any grant, loan, or work assistance under this subchapter ... a student must—
> ....
> (5) be a citizen or national of the United States, a permanent resident of the United States, in the United States for other than a temporary purpose and able to provide evidence from the Immigration and Naturalization Service of his or her intent to become a permanent resident....

20 U.S.C.A. § 1091(a)(5) (West Supp.1989). A recent amendment provides that:

> (h) Immigration status verification required
> The following conditions apply with respect to an individual's receipt of any grant, loan, or work assistance under this subchapter and part C of subchapter I of chapter 34 of Title 42 as a student at an institution of higher education:
> (1)(A) There must be a declaration in writing to the institution by the student, under penalty of perjury, stating whether or not the student is a citizen or national of the United States, and, if the student is not a citizen or national of the United States, that the individual is in a satisfactory immigration status.

20 U.S.C.A. § 1091(h) (West Supp.1989) (Pub.L. 99–603, Title I, § 121(a)(3), (c)(3), 100 Stat. 3388, 3390 (effective October 1, 1988)). We recognize that this was added after Olatunji allegedly defrauded the D.O.E. We merely note the continued importance of proper immigration status to the D.O.E.

**5.** The government's theory to prosecute Olatunji under a "unitary scheme" theory may have important implications for Olatunji. For example, 8 U.S.C.A. § 1251(a)(4) (West Supp.1988) provides:

> (a) General classes
> Any alien in the United States (including an alien crewman) shall, upon the order of the Attorney General, be deported who—
> ....
> (4) is convicted of a crime involving moral turpitude committed within five years after entry and either sentenced to confinement or confined therefor in a prison or corrective institution, for a year or more, or who at any time after entry is convicted of two crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct, regardless of whether confined therefor and regardless of whether the convictions were in a single trial....

should not be shielded from criminal liability under an overly narrow reading of section 1341 simply because the scheme he allegedly created is an elaborate one.

The defendant also urges, as a matter of law, that an indictment alleging "false and fraudulent pretenses and representations" under 18 U.S.C. § 1341 must specifically allege that such false statements and representations were made *directly* to the ultimate victim, i.e., the D.O.E. In *Rankin* we cited *United States v. Perkins,* 748 F.2d 1519 (11th Cir.1984), with approval and for the proposition that an indictment which "tracks" the language of the statute is sufficient. As in *Rankin,* where the defendants invited this Court to construct a special pleading rule for obstruction of justice cases under 18 U.S.C. § 1503 (1982), the defendant here, in essence, is seeking a special pleading rule for indictments under section 1341. We similarly decline the defendant's invitation here.

The prevailing test for determining the sufficiency of an indictment was articulated by the United States Supreme Court in *Hamling v. United States,* 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974), where the Supreme Court stated that, "an indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *See also United States v. French,* 683 F.2d 1189, 1194 (8th Cir.), *cert. denied,* 459 U.S. 972, 103 S.Ct. 304, 74 L.Ed.2d 284 (1982) (same). In quoting *United States v. Carll,* 105 U.S. 611, 612, 26 L.Ed. 1135 (1882), the Court in *Hamling* stated that the sufficiency of basic "tracking" depends on the language of the statute itself:

> It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as 'those words of themselves fully, directly, and expressly, without any uncertainty or

ambiguity, set forth all the elements necessary to constitute the offense intended to be punished.'

418 U.S. at 117, 94 S.Ct. at 2907.

The language under which Olatunji was indicted meets the requirements of clarity and specificity set forth above. The indictment's tracking language supplemented by specific allegations of the criminal activity appear entirely sufficient. *See United States v. Ramos,* 666 F.2d 469, 474 (11th Cir.1982) (collecting cases involving challenges to indictments "tracking" the language of other criminal statutes). While Paragraph Five tracks the language of the statute, Paragraph Six describes the specific nature of the criminal activity. *See* Indictment, *supra* ¶¶ 5, 6. Paragraph Fifteen further charges that after fraudulently obtaining a green card, Olatunji "did state in applications for student aid that he possessed a citizenship status which made him eligible to receive such aid." App. at 13. The "test is not whether the indictment could have been framed in a more satisfactory manner but whether it conforms to minimal constitutional standards." *Perkins,* 748 F.2d at 1524 (citing *United States v. Haas,* 583 F.2d 216, 219 (5th Cir.1978), *cert. denied,* 440 U.S. 981, 99 S.Ct. 1788, 60 L.Ed.2d 240 (1979)). We hold that Olatunji has been adequately informed of the charges against him as required by the sixth amendment and Fed.R.Crim.P. 7(c).[6]

### III.

Based on the foregoing, we will reverse the district court and remand with instructions that Count Two of the indictment be reinstated.

---

**6.** Because we find that the offense alleged falls plainly within the statute, we need not reach defendant's "rule of lenity" argument. *See, e.g., McNally v. United States,* 483 U.S. 350, 107 S.Ct. 2875, 2881, 97 L.Ed.2d 292 (1987) ("There are no constructive offenses; and before one can be punished, it must be shown that his case is plainly within the statute.") (citation omitted).