**UNITED STATES of America**

**v.**

**SCHWARTZ, Steven A., Appellant.**

**No. 89–1482.**

United States Court of Appeals,
Third Circuit.

Argued Feb. 9, 1990.

Decided March 21, 1990.

Rehearing and Rehearing In Banc
Denied April 19, 1990.

Peter Goldberger (argued), Philadelphia,
Pa., for appellant.

Michael M. Baylson, U.S. Atty., Walter S.
Batty, Jr., Asst. U.S. Atty., Chief of Appeals, Jeffrey M. Lindy (argued), Asst. U.S.
Atty., Philadelphia, Pa., for U.S.

Before GREENBERG, SCIRICA and
SEITZ, Circuit Judges.

## OPINION OF THE COURT

GREENBERG, Circuit Judge.

Defendant-appellant, Steven A.
Schwartz, appeals from the judgment of
conviction and sentence entered May 26,
1989, on two counts of a three count indictment charging him with bank fraud under
18 U.S.C. § 1344(a). We are concerned
with essentially legal issues as Schwartz
indicates in his brief that the "appeal does
not contest the sufficiency of the evidence
to establish the charges contained in the
two counts of conviction," but rather challenges the application of 18 U.S.C.
§ 1344(a) "to the facts as alleged and
proved." [1]

This is what happened. In 1982
Schwartz founded Medical Audit Services,
a firm which audited hospital bills on behalf of health insurance providers to locate
unauthorized services and overcharges.
While Services was at first successful, by
late 1986 and early 1987 it was having

---

1. In the circumstances we exercise plenary review. *United States v. Williams,* 850 F.2d 142, 143 n. 2 (3d Cir.1988).

difficulties. It maintained its checking account at Philadelphia National Bank which gave it immediate access to deposited checks without waiting for them to clear. Schwartz used Services' account for both business and personal purposes.

On May 27, 1987, Schwartz deposited a check for $30,000 into Services' account with Philadelphia National drawn on an account with the Vanguard Group of his mother, Ilene Schwartz, but signed by him with her authority in her name. On that same day, Schwartz withdrew $2,500 from the Philadelphia National account which, without credit for the Vanguard check, had a balance of a little over $3,700. On May 28, 1987, Philadelphia National, at Schwartz's request, wired $9,500 from Services' account to a commodities account Schwartz maintained in Chicago. In addition, on the same day Philadelphia National wired $18,000 to his California friend, Christine Vitto, who was at a casino in Las Vegas, Nevada. Vitto placed two sports bets for Schwartz from this money. These three withdrawals equalled the amount of the $30,000 deposit. On May 29, 1987, the Vanguard check was returned unpaid as there were insufficient funds to cover it.

When Philadelphia National called Schwartz about the situation, he attributed the return of the check to a drop in the share value of his mother's account at Vanguard. He then went to a Philadelphia National office on May 29, 1987, and deposited another check drawn on the Vanguard account, again signed by him in his mother's name, this one for $35,000. Philadelphia National gave him immediate credit for this deposit. Schwartz then went to Las Vegas and then to California where he visited Vitto from whom he sought a loan. She said she could obtain only $200 but, at Schwartz's suggestion, gave him a signed, partially dated check, blank as to amount, payable to Services, drawn on her account at the Wells Fargo Bank. At that time Vitto showed Schwartz her check register reflecting a balance in the account of only a little over $400.

On June 1, 1987, Philadelphia National received a check for payment drawn on Services' account, signed by Schwartz, and payable to his mother for $10,000. It paid that check even though Services' account, including credit for the $35,000 Vanguard check, contained a balance of $8,709.84. On June 2, 1987, the $35,000 Vanguard check was returned for insufficient funds and, once again, the bank got in touch with Schwartz about the situation. On June 3, 1987, Schwartz brought Vitto's check to Philadelphia National, completed in his handwriting for $80,000, and deposited it. The bank, though already burned twice, adhered to its policy and gave him immediate credit for the $80,000.

The pace of events accelerated rapidly following the deposit of this third worthless check. On June 4, 1987, Schwartz had Philadelphia National wire $15,000 from Services' account to his commodities account and he obtained a cashier's check for $24,000 from Philadelphia National for a check he drew on Services' account. In addition, on June 4, 1987, the bank paid a second $10,000 check he had drawn in favor of his mother on Services' account. That evening he deposited the $24,000 check with an Atlantic City casino, lost $16,400 gambling, and withdrew the balance of the $24,000 from the casino. The following day he obtained another $15,000 cashier's check from Philadelphia National, debited against Services' account. He then returned to the casino, deposited the $15,-000 check, lost $4,900 gambling, and withdrew the balance of the $15,000.

The action then slowed for several days as the next significant event was on June 10, 1987, when the Vitto check was returned for insufficient funds. By that time the overdraft balance in Services' account was $94,085.23.[2]

Schwartz testified at the trial and had an explanation for the foregoing events. He said he thought the Vanguard check for $30,000 was good, that Vitto's father was

2. This overdraft amount cannot be explained solely on the basis of the transactions we have described, as we calculate that Schwartz withdrew $94,000 from Services' account which had a positive opening balance of over $3,700. This discrepancy is not significant to our result.

going to cover the $35,000 Vanguard check in time for it to be honored, and that Vitto's father was going to set up him and Vitto in business and, in connection with that enterprise, cover the $80,000 check. Schwartz testified that he did not repay the $94,000 to Philadelphia National on advice of counsel because he had offsetting claims against the bank.[3]

Not surprisingly the foregoing events led to the return of the indictment. In count one it was alleged that Schwartz "knowingly devised and executed, and attempted to devise and execute a scheme and artifice to defraud PNB [Philadelphia National] and to obtain the monies and funds owned by and under the custody and control of PNB by means of false and fraudulent pretenses, representations and promises, knowing those pretenses, representations and promises to be false when made." The count then described the depositing of the three worthless checks and the various withdrawals and, in the last paragraph, made particular reference to the first Vanguard check for $30,000.[4] The second and third counts incorporated the first count by reference, but respectively made reference to the second Vanguard check, *i.e.*, the $35,000 check, and the $80,000 Vitto check. In all three counts it was alleged that Schwartz knew that the checks he deposited were drawn on accounts without sufficient funds to cover them. In each, Schwartz was charged with violating 18 U.S.C. § 1344(a), without specification of the applicable subsection, (a)(1) or (a)(2).

At the ensuing trial, Schwartz was acquitted on count one but was convicted on counts two and three. On count two he was fined $10,000 but a sentence of imprisonment was suspended and he was placed on probation for five years on condition that he pay the fine and a special assessment of $100, and make restitution to Phil-

adelphia National of $94,085.25.[5] On count three he was sentenced to a custodial term of 18 months. This appeal followed.

We do not doubt but that a person of ordinary understanding and experience, even though not trained in the law,[6] might wonder how Schwartz, in view of the essentially undisputed case against him, could possibly hope to obtain a reversal of his convictions under 18 U.S.C. § 1344(a), which provides that any person who "knowingly executes" "a scheme or artifice" "to defraud a ... financial institution" is guilty of an offense.[7] Probably to a layman, a person who deposits checks knowing that they are worthless and then withdraws the cash amount they purport to represent from the gullible depository before the checks bounce, is guilty of a fraud. Indeed, it appears that inasmuch as it was clear that Schwartz surely knew when he deposited them that the second Vanguard check and Vitto's check were worthless, he had no reasonable chance for an acquittal on the second and third counts. Yet Schwartz, confronted with an overwhelming problem on the facts, argues the law and contends that what he did was not a federal bank fraud under 18 U.S.C. § 1344(a). Rather, he regards this case as nothing more than "a garden-variety, state-law" case. Thus, in his view we should remand for entry of a judgment of acquittal or at least grant him a new trial.

Schwartz's principal argument is not complicated. He points out that in *United States v. Goldblatt*, 813 F.2d 619, 624 (3d Cir.1987), we said that a defendant can be convicted under U.S.C. § 1344:

> if the Government proves beyond a reasonable doubt that the defendant knowingly (1) engaged in a scheme to defraud a federally insured financial institution, or (2) participated in a scheme to obtain

---

**3.** We note, however, that Philadelphia National obtained a default judgment for $94,085.23 against Schwartz.

**4.** The $2,500 withdrawal on May 27, 1987, was not mentioned.

**5.** It will be noted that this amount exceeded the overdraft balance by two cents.

**6.** Perhaps we should say particularly if not trained in the law.

**7.** It is undisputed that Philadelphia National is "federally chartered or insured" as set forth in 18 U.S.C. § 1344(a).

money under custody or control of the financial institution by means of false statements or representations.

He notes that the court here in its charge instructed the jury, as did the district court in *Goldblatt, see* 813 F.2d at 623, that bank fraud has three elements, that: "there existed a scheme or artifice to defraud a federally insured financial institution of money"; "the defendant participated in the scheme by means of false pretenses, representations or promises which were material"; and "the defendant acted knowingly with specific intent to defraud." Schwartz regards this charge as having "collapsed" subsections (a)(1) and (a)(2) of 18 U.S.C. § 1344. The court then instructed the jury that there had to be fraudulent misrepresentations or omissions reasonably calculated to deceive persons of ordinary comprehension and prudence. Schwartz asserts that the indictment charged as false pretenses or misrepresentations only the deposit of the worthless checks and the withdrawal of the funds before the checks were returned, and this was all that was proven at trial.

He contends that as a matter of law these actions are insufficient to constitute false pretenses, promises or representations. For support of this contention, he cites *Williams v. United States*, 458 U.S. 279, 284, 102 S.Ct. 3088, 3091, 73 L.Ed.2d 767 (1982), in which the Supreme Court said that a "check is not a factual assertion at all, and therefore cannot be characterized as 'true' or 'false.'" He then points out that in *United States v. Frankel*, 721 F.2d 917 (3d Cir.1983), we held in a check-kiting case, following *Williams*, that checks written against falsely inflated balances could not be "false or fraudulent pretenses, representations, or promises" under the mail fraud statute, 18 U.S.C. § 1341. Thus, he urges that as the bank fraud statute was enacted as part of the Comprehensive Crime Control Act of 1984, *see* Pub.L. No. 98–473, Title II, § 1108(a), 98 Stat. 1976, 2147, and tracks the earlier mail fraud statute, the same result should be reached here. Therefore, in Schwartz's view, since his conviction was predicated on findings insufficient as a matter of law

that he made false pretenses, representations and promises, he should be acquitted. His alternative position, that he is entitled to a new trial, is predicated on the contention that the jury may have convicted him "solely on the basis of finding that the second and third checks, drawn on insufficient funds, constituted 'false pretenses, representations or promises....'"

Schwartz further urges that in any event he could have been validly convicted of only one offense, notwithstanding the fact that the two counts on which he was convicted were for separate deposits of checks, as at most there was only one scheme to defraud. He also argues that the court erred in requiring restitution in the amount of $94,085.25, as $30,000 of the loss was attributable to the first Vanguard check, the subject of count one on which he was acquitted.

■ We reject Schwartz's argument that he must be acquitted for the following reasons. Under 18 U.S.C. § 1344(a), it is an offense to execute a scheme or artifice to defraud a federally chartered or insured financial institution *or* to obtain money from it "by means of false or fraudulent pretenses, representations, or promises." Inasmuch as these two provisions are clearly disjunctive, we hold that a person may commit a bank fraud without making false or fraudulent pretenses, representations or promises, as this is the "plain meaning" of the statute. *See Garcia v. United States*, 469 U.S. 70, 75, 105 S.Ct. 479, 482, 83 L.Ed.2d 472 (1984). The indictment charged both aspects of the offense so that Schwartz could have been convicted if the government proved he was guilty under either. *See United States v. Frankel*, 721 F.2d at 920 (construing 18 U.S.C. § 1341).

In *United States v. Goldblatt*, 813 F.2d at 624, we indicated that the "term 'scheme to defraud,'" in 18 U.S.C. § 1344(a):

is not capable of precise definition. Fraud instead is measured in a particular case by determining whether the scheme demonstrated a departure from fundamental honesty, moral uprightness, or fair play and candid dealings in the gen-

eral life of the community. The bank fraud statute condemns schemes designed to deceive in order to obtain something of value.

Here the jury found that Schwartz knew that the $35,000 and $80,000 checks were not drawn on sufficient funds. Accordingly, regardless of what representations he may have made by the deposit of those checks, it simply cannot be denied that when Schwartz caused the various withdrawals to be made, he knew that he was obtaining money that was not his. Furthermore, he does not contend that Philadelphia National was actually aware that it was permitting withdrawals to be made on the basis of false deposits created by worthless checks.

Schwartz, of course, does not suggest that he was entering into consensual credit transactions with Philadelphia National by his manipulations. In the circumstances of this case, if Schwartz did not depart from fundamental honesty, moral uprightness, fair play and candid dealings, then it is difficult to understand what conduct would constitute such a departure. This case cannot be simply dismissed as a "garden-variety" state case because the product grown here was money which sprouted from worthless checks in circumstances which Congress intended to interdict by the bank fraud statute. Inasmuch as Schwartz's conduct was fraudulent without regard for any representations that he may or may not have made by the deposit of the checks, we will affirm his convictions under 18 U.S.C. § 1344(a)(1).

We are aware that in *United States v. Olatunji*, 872 F.2d 1161, 1165 (3d Cir.1989), we indicated that, after *United States v. Frankel*, 721 F.2d at 917, the question of whether "any false representations or omissions at all are necessary to state an offense under" 18 U.S.C. § 1341, the mail fraud statute, was "arguably left open." Of course, inasmuch as this case does not involve a charge under 18 U.S.C. § 1341, we will not construe that act. We think, however, that this case demonstrates why a charge of bank fraud should not be dependent upon proof of false representations or omissions, though usually it will involve such conduct.[8]

While Schwartz makes much of the fact that the indictment charged that he obtained money by false pretenses, representations and promises, it is important to understand that the indictment was not dependent on that statement. Indeed, the particular allegations with respect to each of the three worthless checks in all of the counts do not include a charge that Schwartz made any representations or promises regarding the checks. Rather, the specific allegation in each count was that "for the purpose of executing the above-described scheme and artifice" Schwartz presented the check for deposit "well knowing at the time of the deposit that there were not sufficient funds in the Vanguard [or Vitto's] account to cover the check." Accordingly, the indictment was focused on what Schwartz knew, not what he represented. Thus, this case is unlike *United States v. Olatunji*, 872 F.2d at 1165, in which, in dealing with a mail fraud indictment charging misrepresentation, we indicated that "we must assume that the grand jury based its allegations on this premise," *i.e.*, that there were misrepresentations. Here quite the opposite is true as

---

**8.** It might be contended that Schwartz's failure to advise Philadelphia National that the last two checks he deposited were drawn on insufficient funds was a fraudulent omission and that such an omission is within 18 U.S.C. § 1344(a)(2). We, however, do not predicate our decision on that basis, as 18 U.S.C. § 1344(a)(1) no more refers to an omission than it does an affirmative pretense, representation or promise. We note that in a concurring opinion in *United States v. Frankel*, Judge Sloviter indicated that in her view it would be appropriate in a mail fraud case under 18 U.S.C. § 1341 to leave open the question of whether a scheme to defraud required at least "a deceitful omission," so that the statute would be construed "after plenary consideration in an adversary context" rather than, as in *Frankel*, on an appeal from an order dismissing the indictment. *See* 721 F.2d at 922. This case perfectly demonstrates in the context which Judge Sloviter thought appropriate why there can be a fraud, at least under the bank fraud statute, even if the deposit of the worthless checks did not carry with it any duty on Schwartz's part to disclose the facts regarding the checks. *See also United States v. Rafsky*, 803 F.2d 105 (3d Cir.1986).

the grand jury indicted Schwartz for both defrauding the bank and for obtaining its funds by false pretenses, representations, or promises.

■ We recognize that the district court charged the jury, following the charge we approved in *Goldblatt*, that an element of the offense was that Schwartz "participated in the scheme by means of false pretenses, representations or promises which were material." That charge, however, could not have harmed Schwartz. To start with, the jury found that this element was proven on the second and third counts. But more fundamentally, to the extent that the indictment was based on 18 U.S.C. § 1344(a)(1), the charge unnecessarily enhanced the government's burden.[9] We will not reverse a conviction because the court "placed an additional burden of proof upon the Government ... which it was not required to sustain under the statute." *United States v. Johnson,* 462 F.2d 423, 427 (3d Cir.1972), *cert. denied,* 410 U.S. 937, 93 S.Ct. 1396, 35 L.Ed.2d 602 (1973). Of course, there is no basis to grant Schwartz a new trial because his assertion that he may have been convicted solely on the basis of a jury finding that the second and third checks constituted false pretenses, representations and promises is simply wrong, as the court charged the jury that there were two other elements of the offense, a scheme or artifice to defraud and a specific intent to defraud.

■ We also reject Schwartz's contention that he should be subject to only a single sentence on the second and third counts. The distinction between the two counts is that the second count referred to the deposit of the $35,000 Vanguard check and the third count to Vitto's check, but each count incorporated the first count, which spelled out at length the scheme or artifice to defraud Philadelphia National. It seems to us that each deposit was a separate violation of 18 U.S.C. § 1344(a)(1), because in making each deposit Schwartz was executing his scheme to defraud Philadelphia National. As the Court of Appeals for the Ninth Circuit indicated in *United States v. Poliak,* 823 F.2d 371, 372 (9th Cir.1987), 18 U.S.C. § 1344(a) "plainly and unambiguously allows charging each execution of the scheme to defraud as a separate act."

Schwartz contends that the court erred in requiring restitution in the complete amount of Philadelphia National's loss, as this included the loss attributable to the deposit of the $30,000 check, as set forth in the first count, and he was acquitted on that count. *See United States v. Pollak,* 844 F.2d 145, 149–52 (3d Cir.1988). The government, though disagreeing somewhat with Schwartz's calculations, generally agrees with Schwartz's contention on this point. In the circumstances, the amount of restitution must be recalculated.[10]

In view of the aforesaid, we will affirm the judgment of conviction and sentence of May 26, 1989, on counts two and three of the indictment, except that we will vacate the provision for restitution therein and will remand the matter to the district court for recalculation of the amount of restitution.

SEITZ, Circuit Judge, concurring.

The majority opinion holds that a defendant may be convicted of a scheme to defraud under 18 U.S.C. § 1344(a)(1) without proof of a false representation. I agree. I also agree that there was sufficient evidence to convict defendant under

---

**9.** *Goldblatt* differs from this case as there the false pretense or representation was critical, as the defendant, in order to have an account re-credited after allegedly unauthorized withdrawals from an automated teller machine, said he could not identify photographs of the person withdrawing the cash, even though it was his son. Thus, *Goldblatt* cannot be understood as importing the false pretense or representation requirement of (a)(2) into (a)(1), particularly in cases such as this, in which there is fraud with-out regard for the false or fraudulent pretense or representation.

**10.** Schwartz contends that the district court erred in its response to a question from the jury regarding the absence from the trial of Vitto's father as a witness and he seeks a new trial on that basis. We have carefully reviewed this issue and are satisfied that the court did not abuse its discretion in its response. *See United States v. Otto,* 850 F.2d 323, 326 (7th Cir.1988).

§ 1344(a)(1). I part company with my colleagues on the approach to the disposition of the appeal insofar as it attacks the verdict.

I

Although the majority opinion does not say so explicitly, it appears to recognize that the jury charge was erroneous in requiring proof of a false representation to obtain a conviction under § 1344(a)(1). It, in effect, finds the error harmless because, in its view, the charge merely increased the government's burden and thus did not prejudice defendant. If I felt required to decide whether the error was harmless, I would find the claimed error more substantial than does the majority. I say this because of the mandatory language in the charge which collapsed the separate crimes created by § 1344(a)(1) and (2) (false representations) into one crime despite the disjunctive language between (a)(1) and (a)(2).

The claimed error was not raised in the district court by any attack on the charge. Consequently, this court may only reach this issue under the plain error doctrine of Rule 52(b) as explicated in *United States v. Young*, 470 U.S. 1, 15–16, 105 S.Ct. 1038, 1046–47, 84 L.Ed.2d 1 (1985):

The plain-error doctrine of Federal Rule of Criminal Procedure 52(b) tempers the blow of a rigid application of the contemporaneous-objection requirement. The Rule authorizes the Courts of Appeals to correct only "particularly egregious errors," *United States v. Frady*, 456 U.S. 152, 163, 102 S.Ct. 1584, 1592, 71 L.Ed.2d 816 (1982), those errors that "seriously affect the fairness, integrity or public reputation of judicial proceedings," *United States v. Atkinson*, 297 U.S. [157], at 160 [56 S.Ct. 391, at 392, 80 L.Ed. 555 (1936)]. In other words, the plain-error exception to the contemporaneous-objection rule is to be "used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result." *United States v. Frady*, 456 U.S., at 163, n. 14 [102 S.Ct. at 1592, n. 14].. Any unwarranted extension of this exacting definition of plain error

would skew the Rule's "careful balancing of our need to encourage all trial participants to seek a fair and accurate trial the first time around against our insistence that obvious injustice be promptly redressed." *Id.*, at 163 [102 S.Ct. at 1592]. Reviewing courts are not to use the plain-error doctrine to consider trial court errors not meriting appellate review absent timely objection—a practice which we have criticized as "extravagant protection." *Henderson v. Kibbe*, 431 U.S. 145, 154, n. 12 [97 S.Ct. 1730, 1736, n. 12, 52 L.Ed.2d 203] (1977); *Namet v. United States*, 373 U.S. 179, 190 [83 S.Ct. 1151, 1156–57, 10 L.Ed.2d 278] (1963).

Especially when addressing plain error, a reviewing court cannot properly evaluate a case except by viewing such a claim against the entire record.

Thus, I ask whether the claimed error here seriously affected the fairness, integrity or public reputation of these judicial proceedings and thereby resulted in a miscarriage of justice. Among those factors, only fairness is applicable on this record.

The evidence of a scheme to defraud set forth in the majority opinion, even apart from any erroneous reliance by the jury on the worthless checks as constituting misrepresentations, was substantial. Furthermore, defendant does not contend that the worthless checks were not properly admitted into evidence as partial proof of the scheme to defraud under § 1344(a)(1). Consequently, this is not a case where the allegedly erroneous charge resulted in the conviction of the defendant for a nonexistent crime. Rather, the charge required proof of a false representation even though such proof was not required under § 1344(a)(1) and even though the mere deposit of a worthless check was not a misrepresentation. *See Williams v. United States*, 458 U.S. 279, 284, 102 S.Ct. 3088, 3091, 73 L.Ed.2d 767 (1982). Thus, viewing the claimed error in light of the entire record in this case, I am unable to say that it constituted such unfairness as to result in a miscarriage of justice. Since I do not find the asserted error so plain as to be

cognizable, I therefore agree with the majority that the verdicts and sentences should stand.